## BANDY v. THE STATE OF OHIO.

*Criminal law — Murder in perpetration of robbery — Lesser offenses not at issue, when — Bills of exceptions — Rejected documents to be attached, when — Evidence — Contradictory statements of accused before police chief — Admissible ,in rebuttal, when — Cross-examination — Discretion of trial court and review — Charge to jury — Series of special requests — Rejection of all if some erroneous — Right to urge jury to agree.*

1. Under an indictment for murder committed in perpetration of a robbery, where the undisputed evidence tends to prove the *corpus delicti* as charged and the only controverted issue upon the trial is as to the identity of the accused, the trial court is not required to charge as to murder in the second degree, or manslaughter, nor to offer forms of verdict for such lesser offenses.

2. A document proposed and rejected as evidence should be made a part of the bill of exceptions and brought before the reviewing court in order to have the question of its admissibility reviewed.

3. Where the accused becomes a witness in his own behalf on the trial, contradictory statements made to a police officer while in custody of such officer (proper foundation being laid therefor in the examination of said accused on trial) may be offered in rebuttal for the purpose of impeachment.

4. To a certain extent, and within certain limitations, the scope of cross-examination is confided to the discretion of the trial court, and a reviewing court will not reverse for error in such cross-examination unless such discretion is abused or the legal limitations of cross-examination violated to the prejudice of the complaining party.

5. Where special charges are requested to be given as a series the entire series may be rejected if some are erroneous.

6. Proper cautionary instructions urging the jury to agree may be given, and such instructions, if free from the element of coercion, do not constitute reversible error.

(Decided March 31, 1920.)

ERROR: Court of Appeals for Franklin county.

*Mr. M. L. Bigger* and *Mr. John H. Cooper,* for plaintiff in error.

*Mr. Hugo N. Schlesinger,* prosecuting attorney; *Mr. R. J. O'Donnell* and *Mr. Charles G. Saffin,* for defendant in error.

ALLREAD, J.   Henderson Bandy was charged with the murder of Homer R. Day, while engaged in perpetrating a robbery.   The jury returned a verdict of murder in the first degree, with a recommendation of mercy.   Bandy was sentenced in accordance with the verdict.   The undisputed evidence, presented on the trial, is that Homer R. Day, a taxicab driver, had received two passengers at Chillicothe, Ohio, for transportation to Columbus, Ohio.   In making the trip Day passed through the village of Shadesville, and reached a point along the Hartman farms, some distance south of Columbus.   He was found by G. M. Watkins, Samuel D. Blake and Clark Miller, lying upon the highway mortally wounded.   Day was removed to the office of Dr. W. H. Blake, Shadesville, and thence by ambulance to Grant Hospital, Columbus, where he died a few minutes after his arrival.   The physicians testify that he died from the effects of a gunshot wound.   The bullet evidently entered from the back or shoulder, passing through the vital organs and leaving through the abdomen.   The physicians also testify that the clothing bore undoubted evidence that the gun was fired at close range.   The parties who found Day testify that his pockets were turned inside out and that he was stripped of all valuables.   It appears clearly that Day's car was also driven away, and it was afterwards found near Livingston avenue in the south part of the city of Columbus.

Day himself made certain declarations in the interim preceding his death. These statements were properly and sufficiently qualified as dying declarations and were admitted in evidence as such. The law regards dying declarations as evidence. The consciousness of impending death takes the place of an oath. The dying declarations of Day were transmitted to the jury through the evidence of witnesses who were present. It is true that the testimony of these witnesses is not alike in all the details. It would be somewhat strange if it were so. Their testimony, however, is substantially the same as to all essential facts. Day's dying declaration is to the effect that he was shot by one of the occupants of his automobile. His declaration is also clearly to the effect that the occupants of the automobile purposely committed the murder and that it was done in the perpetration of robbery. Day's statement is also clearly to the effect that the crime was committed by the persons who became his passengers at Chillicothe, Ohio, and that they could be identified by certain men in Chillicothe.

It is claimed that there was some confusion in the evidence as to which one of the passengers in the taxicab actually shot Day. That fact was not vital or important except as one of the details. No matter which one fired the shot both were liable as principals for the murder. Section 12380, General Code.

Day's dying declaration has every impress of truth and is undisputed. It is, therefore, clearly established by the undisputed evidence that Day was murdered by the occupants of his car in the

perpetration of a robbery.   We think it clear from the record that the material facts so stated were not challenged by the defense.

The controverted issue was as to the identity of the perpetrators.

The state claimed that Henderson Bandy was one of the two men who jointly committed the crime.   Considerable evidence was offered by the state to connect Bandy with the commission of the offense.

The opening statement of counsel for the defense is as follows:

"Mr. Cooper:   If the Court please, and Gentlemen of the Jury, briefly, we expect the evidence to show that this man could not have committed this crime and that he is, therefore, innocent of the charge."

The burden of the defense was an alibi.   Evidence was offered tending to prove that Bandy was in Columbus, Ohio, during the entire day and evening of the homicide and therefore could not have been in Chillicothe, nor present at the time of the murder.   Bandy himself testified and denied any connection whatever with the crime.   No evidence was offered and no issue was raised but to the effect that the murder as charged was committed by the occupants of the car.   No evidence was offered and no claim was made tending to dispute the circumstances of the crime nor to reduce the grade of the offense.   As the evidence stood, if Bandy was identified beyond a reasonable doubt as one of the perpetrators of the crime he was guilty as charged in the indictment.   If the evidence did not so identify him as one of the perpetrators of the crime, then

he was entitled to an acquittal. We think there was no foundation for any intermediate grade. The trial court charged the jury upon murder in the first degree and refused to charge or furnish verdicts for any lesser grade of murder. The jury were charged that if the evidence was not sufficient to convict defendant of murder in the first degree he should be acquitted.

Counsel for plaintiff in error challenge the correctness of the court's charge in this respect. It is claimed that the court had no right to limit its charge to murder in the first degree or acquittal, and that it was the province of the jury under Section 13692 to fix the grade.

It is not important in the status of this case to express an opinion as to whether a possible or supposable state of evidence might justify a charge upon the lesser or included offenses. The charge of the court should be limited to those features which the evidence tends to support. While the charge of the court should not go beyond the indictment, it is equally well settled that it should be appropriate to the evidence. In the case at bar the defendant, Bandy, was either guilty of murder in the first degree, as charged, or he was not guilty, and the court properly so limited its charge.

This proposition is settled in Ohio by the cases of *Dresback* v. *State,* 38 Ohio St., 365, and *State* v. *Schaeffer,* 96 Ohio St., 215.

The state after proving the *corpus delicti* offered evidence tending to connect Bandy with the homicide.

William H. Duncan, a traveling salesman, who had known Day for several years, met him on the date of the homicide at the Warner House in Chillicothe talking with a man whom he positively identified as the defendant Bandy. Clarence J. Haggard, the keeper of the Canteen Restaurant at Chillicothe, and referred to in the dying statement of Day, testifies that Bandy resembles one of the men he saw with Day. There were other witnesses whose testimony also tended to prove that Bandy was in Chillicothe on February 10, 1919, the date of the homicide.

Mrs. Maggie Stergle, a boarding and rooming house keeper, with whom Bandy had roomed and boarded, testifies that on February 15, five days after the homicide, Bandy called at her place and in the course of the conversation admitted that he had shot and killed Day. Her evidence also tended to prove that the motive was robbery. Mrs. Stergle is corroborated in some of the details by other witnesses who were in the house at the time. She also testifies that she received a letter from Bandy the following week. This letter was dated at Jackson, Ohio, but the day of the month is not given. In the letter this statement is found:

"Now if you hear anything let me no."

The state also offered the testimony of certain witnesses residing at Jackson, Ohio, where Bandy at one time lived, that they knew Bandy and that he was in Jackson, Ohio, on February 18, 1919, offering to sell a certain watch and gun. Bandy states that he was in Jackson the week before the homicide, and that he caused the letter to be written

and sent to Mrs. Stergle at that time, but denies. *m toto* the affair with Reynolds and others.

The room occupied by Bandy at the home of Mrs. Skinner was, after the arrest, searched by the officers and certain articles were found either in his room or in other parts of the house.

The defendant took the witness stand and positively denied that he was at Chillicothe on February 10, 1919, or had any connection whatever with the murder. He also claimed that he was at work during the whole of the working hours of that day at the plant of The Hulse Manufacturing Company in Columbus, Ohio, and that he was at and around the home of Mrs. Skinner (where he roomed and boarded), during the evening and night of that day. He is corroborated by Mrs. Skinner and others as to his whereabouts in the evening, and by Sherman Henderson as to his being at work on that day. Sherman Henderson was the foreman at the Hulse factory and testifies that he made one and sometimes two rounds of the shop and from such inspection made up the time of the different workmen. He testifies that the time book shows that Bandy worked full time on February 10, and that he was paid full time therefor. The conflict of evidence on the subject of Bandy's identity and connection with the homicide was a question of fact for the jury.

Various errors in the admission and rejection of evidence are assigned as a ground of error.

We find no prejudicial error in the admission of evidence as to the finding of the gun, the keys and other articles in Bandy's room and about the Skinner home. It may be that these articles were not a formidable part of the evidence, nevertheless in a

, case involving as this does to a certain extent circumstantial evidence a latitude must be allowed. So also as to the evidence of the Jackson witnesses in respect to his exhibition of various articles and his offer of them for sale. The courts are accustomed to allow a certain latitude as to the conduct of an accused after the commission of the offense as tending to show guilty demeanor and his connection with the offense charged. It is claimed by the plaintiff in error that the trial court erred in admitting in evidence the letter to W. A. Bandy. This was offered on the cross-examination of Mrs. Skinner who testified for the accused. We think it had a bearing upon the relationship between the witness and the defendant Bandy, and therefore was competent on the question of credibility.

The mere fact that an item of evidence tends to prove another crime does not render it incompetent if it has a bearing upon the case on trial. The trial court at the time of the admission of this evidence stated that it was competent upon the question of credibility, and we agree that it was.

It is earnestly argued that the trial court erred in excluding the time book of the Hulse factory. We have carefully considered the evidence in this respect. Henderson used the book to refresh his recollection and testified fully from the contents of the book. We are not advised by the record what, if any, additional facts the introduction of the book would disclose, nor is the book attached to the bill of exceptions or otherwise brought before the reviewing court.

In the case of *Palmer* v. *Yarrington,* 1 Ohio St., 253, it was held that a document proposed to be

offered in evidence and rejected should be made a part of the bill of exceptions in order to have the question of its admissibility tested in the reviewing court. See also *Cincinnati Iron Store Co.* v. *Trustees Cincinnati Southern Railway,* 9 C. C., N. S., 103.

Under the present state of the record we are bound to sustain the trial court in excluding the time book of The Hulse Manufacturing Company. There is no sufficient showing upon which a reviewing court could hold that its exclusion was prejudicial.

It is also claimed that the cross-examination of Mrs. Stergle, a witness for the state, was unduly restricted, and that the cross-examination of the defendant Bandy and his witness Mrs. Skinner was unduly enlarged, and the direct examination of said witness unduly limited, and that in the case of Mrs. Skinner the court improperly reprimanded her as to her manner of giving testimony in certain respects. Upon consideration of the record we are unable to find that the trial court abused its discretion in these respects. The testimony as to what the alleged priest said and did at the home of Mrs. Skinner was competent so far as it tended to explain the presence of the various articles in the room of Bandy and in the home of Mrs. Skinner. We think the trial court did not err in refusing to follow this incident into its collateral bearings or to go beyond the purpose for which it was admitted.

Objection is made to the introduction in evidence of the examination of Bandy before the chief of police. This evidence was offered in rebuttal. A

proper foundation for its admission was laid in the cross-examination of Bandy and we think his statement before the chief of police was competent in rebuttal.

Some twenty-one special charges were filed with the clerk and requested before argument. These were all refused and a general exception was noted.

There is no request for the giving of these charges separately. Some of them were clearly erroneous and some were repetitious. These facts would justify the trial court in refusing the entire series. *French* v. *Millard*, 2 Ohio St., 44; *Walker* v. *Lessee of Devlin*, 2 Ohio St., 593; *Cincinnati & Harrison Turnpike Co.* v. *Hester*, 12 C. C., 350, and *American Steel Packing Co.* v. *Conkle*, 86 Ohio St., 117.

An additional instruction was also asked before argument, but was, in our judgment, properly refused. The recital therein, that the evidence tending to show guilt was circumstantial, was misleading, because it was not entirely so. The dying declaration of Day in connection with the identification of the parties was direct rather than circumstantial evidence.

We have carefully read and examined the general charge. We have heretofore discussed the court's charge in respect to the grade of the offense. There are other objections made to the general charge, principally in relation to the trial court's statement of the law of reasonable doubt and of the presumption of innocence.

While the law of reasonable doubt is not stated in the exact phraseology of the reported cases we find no essential difference.

We think the charge as a whole contains no prejudicial error.

Counsel for plaintiff in error particularly object to the cautionary instruction of the court in respect to agreement, when the jury was brought in from its deliberations. It is claimed that the statements of the trial court tended to coerce the jury into a verdict.

The main portion of the court's remarks, including those relating to the expenses of the trial to both parties, was in our judgment unobjectionable. Some inference is drawn by counsel from remarks relating to the failure of the trial court to obtain quarters for the jury over night. It is claimed that there is a suggestion, or possibly inference, that the jury might be compelled to remain in the deliberation room over night. Assuming all that might be claimed for this by counsel for plaintiff in error the record shows that the jury were at 11:30 P. M. quartered in the Hartman Hotel for the night, and returned at 8 A. M. and continued in deliberation until about 9 A. M., when the verdict was reached and returned. We think under the circumstances there was no prejudicial error in such statement. The jury were not held in deliberation an unreasonable period, and the fact that they did not agree until the following morning is a clear indication that the possibility of their being kept in the deliberation room over night should not be held to have had a tendency to coerce the verdict or operate as a restraint over the free deliberations of the jury.

This is an important case. The question has been very fully and ably presented by the prosecuting attorney and his assistants as well as by the attor-

neys for the accused. Counsel for the defense are especially to be commended for their very earnest and painstaking and conscientious defense of their client.

We have carefully considered the record in connection with the points made in argument and brief and have reached the conclusion that there is no prejudicial error in the record and that the verdict of conviction is not contrary to the manifest weight of the evidence.

*Judgment affirmed.*

FERNEDING and KUNKLE, JJ., concur.