## BURNETT v STATE

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 15, 1935

D. F. Rendinell, Youngstown, for plaintiff in error.

J. H. Leighninger, Prosecuting Attorney, Youngstown, for defendant in error.

102

**OPINION**

By CARTER, J.

A number of errors are set out in the petition in error, but we are only disposing of those pointed out in the brief of plaintiff in error, and first it is claimed that the court erred in the introduction of evidence by the State. The State sought to and introduced evidence of the Chief of Police of Lisbon, Ohio, as to a conversation he had with the defendant on March 4th, 1934, on the streets of Lisbon, when he claimed to have arrested her and Russell Adams, the theory of the State being apparently that there was a threat made by her against Adams, and that this was introduced to. establish to some extent intent. It is claimed that this was too remote and constituted reversible error.

Again, it is claimed that the court erred in permitting the State to offer the evi-

dence of Nordi Vitalli, concerning an incident which occurred in Pennsylvania in the year 1932, about two years before the happening of the event in this case. The Chief of Police of Lisbon testified that when he made the arrest, on March 4, 1934, of the accused and Adams, the deceased, that she stated, in addressing Adams, "If I ever get out of here, it will be either you or me." Also the court, over objection of the defendant, permitted a witness for the State, Nordi Vitalli, to testify as follows. He testified that he resided in Lisbon and knew Mildred McDonald Burnett, and that he was also acquainted with Russell Adems; that he and Russell Adams and Mildred Burnett and another lady at one time took an automobile ride together, and that they had some difficulty at that time. He testified that he remembered Mildred saying, "When me and Russell was fighting at the time, and after we quit fighting she seen Russell and me and she got sore at both of us, and she said, 'I will fix you both. Where is my pocketbook,' That is all I know." The defendant claims that such was too remote and was prejudicial error in permitting its introduction.

We have considered these two claimed errors and conclude there was no prejudicial error in this respect.

Number two, that the court erred in overruling defendant's motion for a directed verdict at the close of the State's case. The State introduced the testimony of some fourteen witnesses, some favorable to the State and others not so much so, and in addition to the testimony of these various witnesses, the confessions of the accused were introduced by the State and made a part of the case. There is no doubt but that the accused shot and killed Russell Adams; in fact, that is admitted in her confession, but justifies the killing under the plea of self defense. Of course, at the conclusion of the State's case she had not testfied that she bona fide believed that she was in danger of death or great bodily harm at the hands of Russell Adams at the time she did the shooting, whether at the time of the shooting she was in danger of death or great bodily harm, requiring the extreme method she employed, was a question for the jury, under proper instructions, and no error is urged in the brief of defendant as to the charge of the court. It is the view of this court that the trial court did not err in the overruling of the motion for a directed verdict at the conclusion of the State's case.

Third, that the court erred in overruling

the motion of defendant at the conclusion of all the evidence. Some eight witnesses testified for the defendant, the defendant herself taking the stand and testified that she in good faith believed that she was in danger of death or great bodily harm at the hands of the deceased at the time of the shooting. Also the other witnesses testified in her behalf. As to whether she was justified in the taking of the life of the deceased, under the evidence in this case, was a question for the jury to determine. That being the case, the court did not err in overruling the motion of the defendant for a directed verdict at the conclusion of all the evidence. Apparently the jury came to the conclusion that the accused was not fully justified in the taking of the life of the deceased, but that there were mitigating circumstances surrounding the act, and found defendant guilty of manslaughter. These were questions of fact for the jury to determine from all the evidence and we can not say as a matter of law that the jury was not justified in returning the verdict which it did in the case.

Fourth, it is claimed that the court erred and abused his discretion in coercing the jury to render a verdict, and in failing to comply with defendant's requests. The evidence disclosed that the case went to the jury at about four o'clock p. m., and the jury remained in the jury room deliberating until about ten o'clock A. M., the next forenoon, except time out for meals, and it is claimed the jury had twice reported they could not agree. It was claimed that it was error in keeping the jury out this length of time without rest, and that it was prejudicial error.

As to the length of time a jury may be kept out by the trial court, rests largely in its discretion. Judicial Discretion of Trial Courts, by Bowers, p. 380, par. 372, under the subject "How long the jury may be held on a case," the author says:

"The question of how long a dead-locked jury should be held together in their deliberations before final decision to declare a mistrial, is one strictly for the solution of the trial judge, and it is one in which precedence will present only slight aid. It is in general the duty of the court to detain the jury until satisfied that its failure to agree springs only from conscientious differences of opinion as to the weight of the evidence. There is no set rule for such matters. Under some circumstances, it might not be fair treatment of a jury to keep them out twenty-four hours, and in another it might also be an abuse of discretion to discharge them until after the lapse of a much longer time. The judge must be the master of the situation, restrained only by the boundaries of a very broad discretion. He must not only be left within the limitation suggested as master of the situation, but efficient administration is promoted by masterful judicial control of it, always paying particular attention to the comfort and health of the jury. He has such power in such field and duty to use it finally but discriminately."

Of course this should not go to the length that such would constitute coercion or an abuse of discretion. This court can not say that the trial court abused his discretion in this regard in his keeping them together for deliberations from four o'clock p. m. to two o'clock p. m. the next day. The record does not disclose that any of the jurors claimed coercion or that they were exhausted in their efforts to reach a conclusion. It might be observed that after the jury had returned its verdict in open court, an inquiry of the jury on the question of coercion and duress, on the suggestion of counsel for the defendant, was propounded to the jury as follows:

"Was any juror coerced or persuaded in signing this verdict or agreeing to this verdict against his or her honest judgment or his or her will?"

The court put the question to each juror, and each juror answered in the negative, "No, sir." Also the following question was propounded to the jury by the court:

"Now, Ladies and Gentlemen, as your names are called, each for himself or herself answer whether the verdict which I have just read in your presence is your verdict."

Each answered, "Yes, sir." If a juror had felt he had been coerced, or that the verdict he signed was not his free act, there was ample opportunity to have so stated. In the light of these answers by the jury, we are satisfied that the jury was in no way coerced or forced into signing the verdict, but that the same was their free act. Now, as to error on the part of the court in not complying with defendant's counsel's request, which was as follows:

"By Defendant's counsel, Mr. Rendinell: If Your Honor, please, I would like to have

this jury polled separately in addition to inquiring of them whether that is his or her verdict, that the court propound to each juror the following questions: First, whether one juror, during the deliberations last night, made the statement in words or substance, that he or she was convinced of the innocence of this defendant and that she certainly shot in self defense, but that she would sign a verdict because he or she wanted to get out of there as quickly as possible. Second, whether one juror was called a blockhead, dumb bell and other vile names by his fellow jurors during his deliberations."

Another question:
"I would like to have addressed to this jury separately, was any juror coerced or persuaded into signing this verdict, or agreeing to this verdict against his or her honest judgment or his or her will?"

To this request the court replied:
"I will refuse to put the first two questions. The last question, however, I will put."

And then the court made the inquiry which is indicated above.

These requests were made after the jury had returned its verdict and before dismissal. We believe that the court properly refused requests numbers one and two. Conversations carried on in a jury room in the discussion of a case are not the proper subject of inquiry by the defeated party, and especially when no foundation is laid aliunde. There was no error on the part of the court in his refusal to put these inquiries to the jury.

Sixth, that the court erred in overruling defendant's motion for a new trial. Many grounds are urged, particularly with reference to misconduct of the jury, the court refusing to hear oral testimony, in addition to two affidavits, filed on hearing on motion for new trial; that the bailiff was not sworn, as provided by §13433-16 GC; that there was an additional charge, in violation of §13442-9 GC.

On the question of misconduct on the part of the jury, we might suggest that none of these matters are brought before this court save and except what counsel has stated in the record. The affidavits are not made a part of the bill of exceptions and are not properly before us, and therefore these affidavits can not be considered. See 4 C. D., 199, and 4 C.C. (N.S.) 255.

With reference to the claim that the bailiff was not sworn, we find that the court dictated into the record a statement that he was so sworn. With reference to the claim that an additional charge was made by the court, in violation of §13442-9 GC, we take it that counsel for defendant claims that the statements made by the court on October 18, 1934, at ten o'clock A. M., as found on page 345 of the record, was the additional charge that counsel claims was made by the court. In this we can not concur, as it appears to this court it was simply an admonition on the part of the court to the jury to try and reach a verdict in the case.

Now, it is claimed also that the court erred in a statement which he made to the jury at the time they reported that they could not agree, in this, that the court stated to the jury, in substance:

"A disagreement should not be had when an agreement can be reasonably secured by an earnest and honest attempt by a jury. You must remember that if this jury disagrees, this case must be finally settled by a jury of twelve men and women, in no respects better qualified to try the issues than you are, and upon no better presentation of the evidence. If that happens, all the time, effort and expense of this trial will have gone for naught. I earnestly urge you, and each of you, to make another frank effort to reach an agreement. Go back to your jury room."

There was an exception to this statement of the court. It was unfortunate that the court did bring into the question of disagreement the expense of another trial. This was indiscreet, but this court does not believe that it was of such enormity that the case should be reversed for that reason, and especially in the light of what each juror stated on his inquiry, if the verdict was the result of his free will and judgment.

It is also urged that the verdict of the jury is manifestly against the weight of the evidence. We have read the entire record in this case, and in view of the evidence therein contained, we are satisfied that the jury could return the verdict which it did without being in violation of the rule applicable to criminal cases. Coming to this conclusion, the lower court is affirmed.

Judgment affirmed.

ROBERTS and NICHOLS, JJ, concur.