The State of Ohio, Appellee, *v.* Swanson, Appellant, et al.

[Cite as State v. Swanson, 9 Ohio App. 2d 60.]

(No. 27643—Decided January 12, 1967.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Leo M. Spellacy,* for appellee.

*Mr. Abraham L. Adelstein,* for appellant.

Artl, C. J. This is an appeal on questions of law from a judgment entered by the Court of Common Pleas upon the verdict of a jury finding appellant, Swanson, and co-defendant Childs guilty of assault with intent to rob one Harry Knight, under one count of the indictment, and of assault and battery, a lesser included offense, with respect to a second count of aggravated assault upon one Moses F. Hammons. The within appeal relates to Kenneth Swanson alone.

Defendants were jointly tried in an action that commenced

September 7, 1965, and ended with a jury verdict on September 17, 1965.

The appellant urges twelve assignments of error, the first of which reads:

"The trial court erred in allowing the jury to disband during the lunch hour, on two separate occasions, after the case had been submitted to them for deliberation, without the supervision of the bailiff, over the objection of the defendant, Kenneth Swanson, all contrary to law."

Defendant urges, since he was on trial on a felony charge, that, pursuant to Section 2945.33, Revised Code, it is the mandatory duty of the trial court to keep the jury together during the lunch hour under the charge of a court officer, and that the trial court does not possess discretion to do otherwise.

The pertinent part of the section of the Revised Code applicable to the present problem reads:

Section 2945.33. "When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. * * *"

That section was amended (131 Ohio Laws 681) effective November 9, 1965. The amendment to the statute lays down specific requirements "where the offense charged may be punishable by death." Except for such change, the remainder of the statute is for all practical purposes the same as it was prior to the amendment. We, of course, are not concerned with the amendment, since this is not a capital case.

In the case of *Emmert* v. *State,* 127 Ohio St. 235, decided November 8, 1933, wherein one of the errors complained of was "that the members of the jury were allowed unlawfully to separate while they had the case under consideration," the Court of Appeals found that no error was committed in any of these respects, there being other errors complained of.

The Supreme Court addressed itself to this ground of error in the following language:

"(1) Section 13448-1, General Code (113 Ohio Laws 194), now permits a separation of the jury under proper supervision, at the court's discretion, and the Ohio cases cited by the plain-

tiff in error were all decided prior to the enactment of this provision. The practice of allowing such separation, especially in criminal cases, should be carefully guarded, and perhaps in the instant case there was some laxity on the part of the bailiffs. Upon one occasion eleven of the jurors were taken to breakfast, leaving one alone in the courtroom, open to access by outsiders. No definite prejudice to the accused appears to have resulted, however, and we do not disturb the judgment of the Court of Appeals in this respect.''

In view of the fact that in that decision the Supreme Court dealt with Section 13448-1 of the General Code, which is the predecessor of the present statute, we have deemed it advisable to review the historical development of that section of the General Code, as well as its predecessor.

In our review of the subject, beginning with Section 13688 of the General Code, effective June 30, 1921 (109 Ohio Laws 57), which subsequently, by revision of the Code of Criminal Procedure in 1929, as reported in 113 Ohio Laws 123, was repealed by the General Assembly (113 Ohio Laws, at 215) which enacted Section 13448-1, General Code, as appears at page 194 of 113 Ohio Laws, we find this section was again repealed by the General Assembly in its 1933 session and a new section, Section 13448-1, General Code, was enacted. 115 Ohio Laws 531, effective October 17, 1933.

That section continued in force in the form indicated until the enactment of Section 2945.33, Revised Code, effective October 1, 1953, and it is evident that some minor changes were incorporated into the section in such revision. From October 1, 1953, to the date of the trial herein the statute in its pertinent part existed in the form above set forth.

In analyzing the present statute in the light of Section 13688, General Code, and each amendment since, we note that the first paragraph has remained intact. There has been no change therein. By the same token, the second paragraph of the statutes, except for the changes in the specific language in which the proviso clothing the court with discretion to permit the jurors to separate during the adjournment overnight, that discretion being reposed in the court, is found in each enactment.

Neither Section 13688, General Code, nor any of the enactments since has made any effort to deal with the subject of separation of the jury after submission of the case for noonday luncheon in felony cases.

The language of this section, after the amendment effective October 17, 1933, is for all practical purposes the same as the language before, with two material exceptions. One, while the former sections contained the proviso that the court could at its discretion permit jurors to separate overnight "under proper cautions *and* supervision of an officer," the statute as amended now reads "under proper cautions, *or* under supervision of an officer." (Emphasis ours.) This statute as presently enacted contains for the first time the second proviso, namely, the discretion allowed the court, with respect to the trial of any prosecution for a misdemeanor, to permit the jury to separate during their deliberation or, upon adjournment of the court, overnight.

The court in the *Emmert case, supra* (127 Ohio St. 235), comments upon the fact that the statute permits a "separation of the jury under proper supervision at the court's discretion." It also comments to the effect that "the practice of allowing such separation, especially in criminal cases, should be carefully guarded * * *."

Although the present statute is silent as to a separation of the jury during the lunch hour, it does permit the court to allow a separation of the jury during the adjournment of court overnight, *under proper cautions.* It is our conclusion, and we therefore hold, that the court may under proper cautions permit the jury to separate during the luncheon period. Assignment of error No. 1 is overruled.

Assignment of error No. 2 is as follows:

The trial court erred in instructing the jury to continue their deliberations without first inquiring if the jury was hopelessly deadlocked or if it was at all possible to arrive at a verdict, especially after the jury had submitted in writing the document set forth in the record at page 906.

The jury received the case for deliberation on Tuesday, September 14, 1965, at 4:10 p. m., and they resumed their deliberations the next morning, Wednesday, September 15, 1965, at 9:00 a. m., and were excused that day at 4:15 p. m. They re-

64

sumed deliberations on Thursday, September 16, 1965. On Thursday, September 16, 1965, at 12:10 p. m., the jury through its foreman submitted to the trial judge this communication:

"We the jury find the defendant Wendell Childs guilty of the lesser charge, assault and battery, on the second count.

"We the jury cannot agree on a verdict for Kenneth Swanson on aggravated assault or the lesser charge, assault and battery.

"We the jury cannot agree on the assault with intent to rob for Kenneth Swanson and Wendell Childs on the first charge."

The court then instructed the jury:

"Now, ladies and gentlemen, since the trial of this case means a great deal to the parties, and the trial has been at no little expense, the court urges you to make all reasonable efforts to agree upon a verdict, or verdicts.

"You may consider that this case must at some time be decided.

"You were selected in the identical manner and from the same source from which any future jury must be selected.

"There is no reason to suppose that this case will ever be submitted to twelve individuals more intelligent, more impartial, and more competent to decide it or that some clearer evidence will be produced on one side or the other, and with this view, it is your duty to decide the case, if you can consciously do so; therefore, it is necessary that you folks continue your deliberations, being mindful of each other's views and to arrive at a common verdict, or verdicts, if it's at all possible.

"You are reminded of the general charge of this court, which should be kept in mind in its entirety."

The jury returned for further deliberation, and at the close of the day, Thursday, September 16, 1965, at 4:25, the court inquired of the jury if it was possible for them to arrive at a verdict "this evening." The foreman indicated that it was not. The court then instructed the jury as follows:

"Now, I am going to give that portion of the general charge which I read before, which I trust will be of help to each and every one of you ladies and gentlemen.

" 'While you are deliberating, each juror should give careful consideration to the views which his or her fellow jurors

may have to present. A juror should not turn a deaf ear to his or her associate jurors and without listening to their reasons or arguments obstinately stand upon his or her own opinion regardless of what may be said by another juror or jurors. It must be the object of all of you to arrive at a common conclusion, or conclusions, and to that end you should deliberate together with calmness and in a dispassionate manner, being considerate of each other's views.'

''This is merely a portion of the general charge as it was given before. You will remember the entire charge of the court in toto.

''Again, you will recall the other charge the court gave you when you were called down the last time with reference to the fact that this case must be tried by a jury. Any other jury will be selected in the identical manner in which this jury was. A more capable or competent jury could not be selected than this, or a more intelligent jury than this one, than yours.

''It is of the utmost importance that verdicts be reached, if it is at all humanly possible.

''Again, you will remember the entire charge of the court in toto.''

The jury returned its verdict on Friday, September 17, 1965, at 12 noon.

Defendant's position is that it was error on the part of the court to send the jury back for deliberation after the communication received from the jury, without inquiry, as to whether they were deadlocked and could agree upon a verdict, particularly in view of the court's instruction, included in its remarks, ''that this case must at some time be decided.'' Counsel argues that there is no law which makes a verdict by a jury mandatory.

His further criticism is directed at the remarks of the court when it permitted the jury to separate for the night following the same afternoon. Specifically, he pinpoints the remark by the court that ''It is of utmost importance that verdicts be reached, if it is at all humanly possible.'' It is his judgment that language such as this is tantamount to forcing the jury to come to a decision, that the jury was in effect coerced into bringing in a verdict after the communication the jury submitted to the court.

The state seeks to justify the action of the court by citing *Andrews* v. *State,* 15 C. C. (N. S.) 241, 23 C. D. 564; *Bandy* v. *State,* 13 Ohio App. 461; *Burnett* v. *State,* 19 Ohio Law Abs. 100.

The law encourages the agreement of juries, and proper cautionary instructions to that effect may be given, without such instructions amounting to coercion of the jury. See, 15 Ohio Jurisprudence 2d 803, Criminal Law, Section 627; *Liska* v. *State,* 115 Ohio St. 283; *Andrews* v. *State,* 15 C. C. (N. S.) 241, 23 C. D. 564. Whether the jury shall be sent back when it first reports a disagreement is a matter largely within the discretion of the trial court. 53 Ohio Jurisprudence 2d 214, Trial, Section 292. However, the judge may and ought to urge upon the jury all proper motives to induce it to agree upon a verdict, such as the propriety of a spirit of legal concession in their deliberations, the importance to the parties and the public of a verdict, and the saving of time and expense of a new trial.

It appears that the instructions given in this case were predicated upon those given in the *Andrews case, supra* (15 C. C. [N. S.] 241).

Assignment of error No. 2 is overruled.

Assignment of error No. 3 is as follows:

"The court erred in refusing to charge the jury on the law in answer to a written question propounded by them, to which the defendant excepted."

The altercation involved in this action, from which the charges stem, is alleged to have taken place in the basement toilet facilities of a tavern. The immediate problem involves the testimony of the defendant as to how he got to the lower floor. The prosecution was apparently attempting to show the presence of a conflict in the testimony of the defendant given in court with what he had earlier told the police.

It was at this time that the prosecution asked the defendant if he remembered making a written statement to the police and continued along those lines, going so far as to read from a paper purporting to be his statement, over the objection of the defendant. The prosecution in its cross-examination asked the defendant: "Now, didn't you tell the police that Mr. Campbell was the only one who pushed you down the steps?" Over the objection of the defendant, he was permitted to answer, to which defendant excepted. The answer of the defend-

ant was: ''I may have mentioned that Campbell pushed me down the steps. I don't know if—I doubt seriously I specified that he was the only one.''

It should be noted that the state made no attempt to qualify for admissibility defendant's statement in any manner, nor did it contemplate its use for any purpose save impeachment.

It is appellant's position that, when the state asked this question from the alleged statement without affording counsel an opportunity to look at it and question its legality and under what circumstances and when it was obtained from the defendant, and without offering it into evidence, it was highly prejudicial to the defendant.

We are, of course, cognizant of the fact that the use of confessions or statements made by defendants in criminal cases has been greatly circumscribed by the recent decisions of the United States Supreme Court. We shall reach a consideration of those problems in our consideration of assignment of error No. 5.

The use of the statement in the manner described resulted in a question being directed to the court by the jury in written form. It reads:

''Due to the fact the prosecution did not divulge what was given in the written statements at the police station to Detective Johnston by the defendant Kenneth Swanson, could this indicate the testimony given by Swanson while under oath on the stand mean both were not in conflict?''

It is signed by the Foreman, Anthony Jost.

The court answered that question by making the following statement to the jury:

''Now, the jury will remember the evidence as it was presented in the trial of the case. The jury will remember the evidence as it was presented in the trial of the case. The jury is only permitted to consider that evidence which was offered and received in evidence during the course of the trial.

''Evidence consists of the sworn statements, the sworn testimony from the lips of the various witnesses who testified throughout the trial of the case, together with those exhibits which were offered and received in evidence, and, of course, any stipulations entered into by and between counsel.

''Now, does that answer your question, Mr. Foreman?

''Mr. Jost: Yes, it will, your Honor.''

Defendant's contention is that the jury was evidently confused as the result of reading of portions of the alleged statements by the defendant to the police, and that the question related to what inferences might be drawn from the situation and called for a charge by the court on "inferences," which counsel demanded and was refused. It is his position that this was a requested charge on law, and that, pursuant to Section 2315.06, Revised Code, there devolved upon the court a mandatory duty; and a refusal to do so was highly prejudicial.

It is the contention of the state that the question as posed to the court was simply a request for the court to express an opinion on what inferences the jury might draw from the incident of the written statement, and that, the court having, in its general charge, covered the subject of inferences, to do so again would only add emphasis to a subject once covered. The state further contends that the jury was free to make the inference of fact indicated by their question, and if they did, the defendant was not harmed thereby.

Stripping the question posed by the jury of the premise upon which it was based, namely, Swanson's statement to the police and his testimony in court—in our view, the question inquires in substance:

"Are we to understand that these statements by Swanson were not in conflict?"

In our view, this was a question of fact, and it was the task of the jury to determine it from the evidence which it heard, and under the instructions of the court in its general charge the jury had the right, if necessary, to draw whatever inferences logically flow from such testimony. Clearly, it was not the function of the court to express an opinion as to whether there existed a conflict between the statements made by Swanson. That was for the jury to decide as a question of fact.

We disagree with the contention of the appellant that a question of law was presented, and, as a consequence, assignment of error No. 3 is overruled.

Assignment of error No. 4 states:

"The trial court erred in refusing to withdraw a juror and declare a mistrial during the closing argument of the prosecutor, to which defendant Swanson excepted."

The statement complained of being made by the prosecution is contained in the record and reads as follows:

"Then they talked about a whitewash. I think I've already covered that.

"It's a very serious charge, to charge someone with a whitewash. It's awfully easy to make these accusations about a whitewash in the police department, and that we got together with Mr. Knight.

"As I said before, this isn't the first time it's been said. It isn't the first time in this city it has been said, and it isn't the first time in this county that it's been said. It isn't the first time it's been said in this country, for that matter. *How often do we read about police officers being beaten and attacked on the streets with the crowd standing by and jeering, and that's what we have here.*" (Emphasis appellant's.)

It is the prosecution's contention that such argument was in response to the argument of defense counsel, in which he accused a special police officer (the victim in one of the counts charged to the defendant) of accomplishing a "whitewash" of his own conduct by accusing the defendant.

The record indicates that defense counsel gave voice to a vitriolic argument charging the police with a whitewash, covering up for the sin committed in spilling blood in the lavatory and whitewashing the blood with the charge before the grand jury.

It must be borne in mind that the altercation involved in this case occurred in the basement of the Tia Juana Cafe. It stemmed from the fact that a police officer, off duty, and a special police officer allegedly happened upon an attempt by the two defendants, Swanson and Childs, to rob victim Knight in the toilet facilities. A bloody fight ensued.

A careful reading of this record clearly indicates several instances from which we can assume that blood pressures rose on both sides. Heated arguments are frequently engaged in by counsel that give rise to complaints as to the conduct of the opponents. In the case at bar we find that the prosecution's statement complained of was definitely in response to some serious charges made by defense counsel. One who has made the first error cannot avail himself of error which is caused thereby and which is calculated only to offset it; a party cannot complain of

his opponent's argument to the jury, where it amounts only to a reply in kind to matters introduced in his own argument. 3 Ohio Jurisprudence 2d 643, Appellate Review, Section 693. See, also, 4 Ohio Jurisprudence 2d 231, Appellate Review, Section 977, where it is said:

"A judgment will not be reversed because of improper argument of counsel which is provoked by and in reply to argument of the opposing counsel on the same subject. In such a case where both parties have offended, a reviewing court will not undertake to apportion the blame. * * *"

The quotation from *State* v. *Navone*, 186 Wash. 532, 58 P. 2d 1208, found in the opinion in *State* v. *Landrum*, 96 Ohio App. 333, is quite appropriate at this point. It reads:

"Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom. What would be misconduct in one case might very well be held not to be misconduct in another. Each situation involving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed, and that those verdicts which may have been induced by prejudice, or by something beyond the issues, shall not be allowed to stand."

What was the effect which was likely to flow from these arguments? Does the record indicate that the jury was in any manner biased or influenced by those arguments of the defense? Quite the contrary appears. The record discloses, as we have above noted in connection with the other assignments of error, that the jury gave full and complete consideration to the evidence and the law and found the defendant guilty of a lesser included offense as the result of its deliberation. In the face of the record, it is our conclusion that the jury, as sensible men and women, arrived at its verdict fairly, uninfluenced by the complained of arguments. Assignment of error No. 4 is overruled.

Assignment of error No. 5 reads:

"The trial court erred in permitting the prosecutor to read from an alleged statement by defendant Swanson, to which defendant objected."

In our discussion of assignment of error No. 3, we referred

to the fact that the prosecution did use a statement made by the defendant for the purpose of impeachment by way of cross-examination. It was the very statement that became the concern of the jury in presenting the court with the inquiry which became the basis for assignment of error No. 3.

The right to use the statement was challenged by defendant's counsel. The record indicates counsel's objections, and they were predicated upon the failure to establish that the statement was constitutionally obtained, and the state's refusal to permit counsel to examine it for that purpose.

The immediate problem here presented is whether statements, admissions or a confession may be used for the purpose of impeachment. On that score it might be said that the most recent decisions of the United States Supreme Court in *Escobedo* v. *Illinois,* 378 U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, deal with the subject but, by the subsequent decision in *Johnson* v. *New Jersey,* 384 U. S. 719, are made inoperative to the case at bar. However, the subject is not a new development. It has been under consideration by the courts for a long time because of statutory provisions in many states of the Union.

In the case at bar, although the officer to whom the statement was given was in attendance during the entire trial, the prosecution made no attempt during its case in chief to show that the statement was voluntarily given.

In 58 American Jurisprudence 423, Witnesses, Sections 772, 773, we find:

Section 773. "A witness may be impeached by proof of his statements made by way of confession which are inconsistent with his present testimony, provided, of course, the confession was voluntarily made. The authorities are practically a unit in holding that a confession not freely and voluntarily made cannot be admitted in evidence against the person making it, and it is quite generally held, also, that to be usable to impeach the witness the confession must have been made freely and voluntarily. The reason for excluding as evidence against the accused a confession which has been extorted from him or made under inducement in the way of hope of benefit or a reward or a promise of immunity applies with equal force when such a

confession is offered for purposes of impeachment. The confession is just as objectionable and as incompetent and hurtful when offered in the one way as in the other. * * *''

To the same effect is the Annotation in 9 A. L. R. 1358.

From the foregoing it is seen that, to be used for the purpose of impeachment, the record must disclose that statements made by way of a confession and contained in the instrument were voluntarily made. In this case, the prosecution did not propose or attempt to use the statement as an exhibit; it did not offer the statement in evidence; and it was immediately challenged by counsel for defense. The record discloses that, when the prosecution began examining the defendant with respect to the statement, defense counsel immediately objected to the reading of any part of the statement until it might be ascertained under what circumstances it was made and whether the defendant's constitutional rights were protected. The court overruled defense counsel's objections, and the court then permitted the prosecution to continue to cross-examine and the cross-examination to continue to the point that the prosecution attempted by the use of the statement to prove that it was voluntarily given. All this was over the repeated objections of defense counsel.

If we apply the rule of law found in 9 A. L. R. 1358, particular emphasis should be given that part which recites:

''* * * despite the fact that the evidence is offered by the prosecution not as a confession, but merely as a contradictory statement, for the purpose of impeaching the defendant as a witness in his own behalf.''

In the case at bar, the prosecution depended for such showing upon a cross-examination of the defendant upon the very statement it intended to use for impeachment. From the record it is demonstrated that the trial court fell into error because the court was impressed with the fact that the state did not intend to use the statements as evidence in the case.

In the face of the authorities cited above, we are of the opinion that the cross-examination of the defendant to determine the voluntariness of the statement was prejudicial error on the part of the prosecution, as well as on the part of the court in overruling defendant's objections. The vice in permitting this cross-examination is quite clearly demonstrable.

in this case, the witness, in response to the prosecution's question, objected to and overruled by the court, admitted it was voluntary. Suppose, however, that in response to such question by the prosecution the defendant had answered, "No, it was not voluntary." At that point the trial court would have been confronted with the serious problem of conducting the *voir dire* examination usually attendant upon the same question as a part of the state's case in chief in the absence of the jury, and without the jury knowing why it was excused for such purpose. Here, had the defendant answered in the negative, in the presence of the jury, the jury would have been let in on a phase of the trial with which it should not be concerned.

The law in its wisdom seeks to protect the rights of both sides to litigation. To that end it prescribes rules of procedure to avoid prejudice to either side. Adherence to those rules is of paramount importance. When there is a departure from time-tested rules, error is invited and one side or the other may be prejudiced thereby. In our earlier discussion of assignment of error No. 3 we indicated how the reference to the statement of the defendant became the concern of the jury.

We, therefore, conclude and hold that assignment of error No. 5 is prejudicial and is sustained.

After a careful reading of the record, we conclude that assignments of error Nos. 6, 7, 8, 9, 10, 11 and 12 are without merit, and they are overruled.

The judgment heretofore rendered is reversed as contrary to law in that the court erred to the prejudice of the defendant in permitting the state to use defendant's statement for the purpose of impeachment, as set forth under assignment of error No. 5; and the cause is remanded to the trial court for further proceedings according to law.

*Judgment reversed.*

CORRIGAN and SILBERT, JJ., concur.