THE STATE OF OHIO, APPELLEE, *v.* GRESHAM, APPELLANT.

[Cite as State v. Gresham, 10 Ohio App. 2d 199.]

(No. 27757—Decided June 8, 1967.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Francis E. Sweeney,* for appellee.

*Mr. D'Arnold Davis* and *Mr. Elliott Ray Kelley,* for appellant.

ARTL, C. J. The case at bar is an appeal from the judgment of the Common Pleas Court of Cuyahoga County rendered upon the verdict of a jury which found defendant, appellant herein, guilty of second degree murder.

Defendant advances three assignments of error, which are as follows:

1. The trial court, upon objection of the state, erred in rejecting the records of the psychometric and/or psychological testing conducted by the Psychiatric Clinic of the Court of Common Pleas of Cuyahoga County, the Lima State Hospital

and Dr. Melvin Allerhand, and the interpretation and evaluation of same.

2. The trial court, upon objection of the state, erred in refusing to permit Dr. Melvin Allerhand to give his opinion, as a psychologist, as to the capacity of the defendant to discern between right and wrong.

3. The trial court, upon presentation of the state's evidence, erred in permitting police officers to testify as to inculpatory and exculpatory statements of the defendant, made after the accusatory focus had fallen upon him, despite their failure to effectively warn him of his absolute and constitutional right to remain silent and of the right to consult counsel.

As for assignments of error numbers one and two, we have examined the record with respect thereto and, upon a careful consideration thereof, we conclude and hold that the record fails to disclose any prejudicial error; and we, therefore, overrule such assignments.

As to the third assignment of error, the following facts are pertinent: On December 15, 1964, defendant, who had attained the age of eighteen one week previously, was employed in a poultry-processing establishment in Cleveland, Ohio. Defendant was a youth of dull-normal intelligence, who had been raised as one of a family of ten children in a fatherless home in a small rural community in Georgia until his seventeenth birthday.

Although the facts are in conflict as to whether the act was intentional and/or was committed in self defense, on the date in question, defendant apparently stabbed to death a fellow worker at his place of employment with a knife which was a tool of the trade of the poultry business. Defendant then left the building, and the police took him into custody a few blocks away from the business.

The police brought defendant to the hospital where the victim had been taken, to the coroner's office thereafter, and then to the police station. Defendant was questioned by detectives and made admissions both at the hospital and at the police station.

In the state's case in chief, upon direct examination, a Cleveland detective testified as to conversation which took place between himself and defendant at the hospital:

"Q. Did you have conversation with Mr. Gresham there at the hospital? A. I did.

"Q. Will you please relate to your knowledge the conversation that you had? A. We questioned Mr. Gresham with reference to this stabbing, and further questioned him with reference to his age.

"Q. What was his answer? A. He admitted—

"Mr. Lesser: I object to any admissions.

"The Court: Overruled. He may state what his answer was.

"A. He told me that he had stabbed Luther, [sic] Robert Brown. He further told me that he had been in Cleveland a short while, approximately a year, and further learned that he came here directly from Georgia."

Upon rebuttal, the same detective testified upon direct examination as to events which took place at the police station:

"Q. Detective Gardner, in discussing the case with Mr. Gresham after he had been turned over to you, at any time did he tell you that he did not remember what happened?

"Mr. Davis: I object, your Honor.

"The Court: Overruled.

"A. No, he didn't.

"Q. Did he ever tell you where he had obtained the knife from? A. He did.

"Q. And where did he tell you?

"Mr. Davis: I object, your Honor.

"The Court: Overruled.

"A. From the window.

"Q. And in discussing the case with Mr. Gresham, did he ever tell you that Mr. Brown had made any disparaging remarks about his mother? A. No, he didn't.

"Q. And in this discussion did he relate to you any events that took place after Mr. Brown was on the ground? A. He did."

And, upon rebuttal, the same detective testified upon cross-examination as follows:

"Q. Did you give him an opportunity to call up any of his relatives after you brought him to the police station?

"Mr. Sweeney: Objection.

"The Court: Overruled.

"A. I don't recall Mr. Gresham making a request.

"* * *

"Q. Did you at any time ask this boy before you questioned him if he would like legal counsel?

"Mr. Sweeney: Objection.

"The Court: He may answer. Overruled.

" (Thereupon counsel and the Court conferred at the Court's bench outside the hearing of the jury.)

"A. Should I answer that?

"The Court: Yes. Did you ask him if he wanted a lawyer?

"A. No, I didn't."

Initially, it must be recognized that *Escobedo* v. *Illinois* (1964), 378 U. S. 478, is applicable to the case at bar, while *Miranda* v. *Arizona* (1966), 384 U. S. 436, is not applicable for the reason that trial commenced in the instant case in the interim between these dual landmark decisions and that such decisions are not retroactive. *Johnson* v. *New Jersey* (1966), 384 U. S. 719.

Reason dictates the conclusion that the statements obtained from defendant while he was in the police automobile at the hospital and while he was at the police station were secured at a time when defendant was in police custody and at a time when the process of inquiry had shifted from an investigatory nature to an accusatory nature. The state does not contend to the contrary.

And the testimony of the detective in the case at bar, to the effect that defendant had admitted that he stabbed the victim, surely comes within the concept of *Escobedo* that *"no statement* elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis added.) The state does not contend to the contrary.

It becomes apparent from a reading of the record that defendant failed to make a request for counsel prior to the obtaining of the statements in issue by the police. Is such a request for and denial of counsel a requirement under *Escobedo?*

It is clear that the Supreme Court of Ohio holds that a request for counsel is necessary under *Escobedo. State* v. *Carder* (1966), 9 Ohio St. 2d 1; *State* v. *Woodards* (1966), 6 Ohio St. 2d 14; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151. And, recently, this court relied upon and followed *Carder*, stating that "this court is bound to follow a decision of our Supreme Court, which

is squarely in point.'' *State* v. *White* (1967), 9 Ohio App. 2d 271.

Let us proceed to the second requirement under *Escobedo*: that the accused be informed of his absolute constitutional right to remain silent. In the case at bar, the state argues that this question has become moot for the reason that it was not inquired into upon trial.

A reading of the record discloses that defense counsel did not question the testifying detective as to whether the accused had been advised of his constitutional right to remain silent. Defense counsel did, however, object to the admission of any statements made by the accused.

It is elementary that, if the state seeks to use statements of the accused against him, it is a prerequisite to such use that the state establish that such statements were made voluntarily. And, in view of *Escobedo*, it is also incumbent upon the state to establish that an accused was advised of his absolute constitutional right to remain silent and that he waived such right. In the absence of proof by the state that the accused had been effectively warned of his absolute constitutional right to remain silent, or, having been so warned, that he willingly and intelligently waived such right, any statements made by the accused are inadmissible.

If, as in the case at bar, the state fails to establish the warning and waiver but the court nevertheless over objection by defense counsel permits such statements into evidence, is prejudicial error thereby committed?

The state argues that in such case prejudicial error is not committed and attempts to justify its use of defendant's statements on the ground that such statements were used ''to rebut the testimony given by defendant Gresham when he testified in his own behalf at this trial.''

The Supreme Court of the United States has precluded application of the ''harmless error'' rule to cases wherein there is an improper admission of inadmissible statements and has in effect held that such improper admission constitutes prejudicial error per se even where there exists other evidence to establish guilt. *Jackson* v. *Denno* (1964), 378 U. S. 368; *Haynes* v. *Washington* (1963), 373 U. S. 503; *Lynumn* v. *Illinois* (1963), 372 U. S. 528; *Spano* v. *New York* (1959), 360 U. S. 315; *Payne* v. *Ar-*

*kansas* (1958), 356 U. S. 560; *Watts* v. *Indiana* (1949), 338 U. S. 49; *Haley* v. *Ohio* (1946), 332 U. S. 596.

And this court said in *State* v. *Swanson* (1967), 9 Ohio App. 2d 60, that where " * * * the state has failed to show affirmatively that a statement made by the defendant was voluntarily made, it is prejudicial error for the court to permit the state to use such statement for the purpose of impeaching the testimony of the defendant."

In the case at bar, the detective testified upon *direct* examination that "he told me that he had stabbed Luther, [*sic*] Robert Brown."

The fallacy of the state's argument, then, becomes apparent. The state did not, in fact, limit the use of the accused's statement "to rebut the testimony given by defendant Gresham when he testified in his own behalf at this trial." Rather, the state used the accused's statement on direct examination in its case in chief.

Thus, it becomes unnecessary to determine whether the use of the statement would be permissible under any possible rule providing for limited use for impeachment purposes of an otherwise inadmissible statement. This court's decision in *State* v. *Swanson* (1967), 9 Ohio App. 2d 60, no doubt would control in that situation and would preclude the use of the accused's statement, even for the limited purpose of impeachment.

In summary, it must be said that the Supreme Court of Ohio has reached the conclusion that under *Escobedo* a request for counsel must be made and denied, and this court is bound by that decision.

As to the requirement under *Escobedo* that the accused be advised of his absolute constitutional right to remain silent, it is carried by the Supreme Court of Ohio into its decision in *Carder, supra.*

And since the statements in the case at bar were not used for purposes of impeachment but rather were used in the state's case in chief, any possible exception to the prejudice per se rule as urged by the state is inapplicable.

For the reason that the state did not meet its burden of proof on this issue but, nevertheless, was permitted to present testimony as to the statements on direct examination in the

state's case that "he told me that he had stabbed Luther, [*sic*] Robert Brown," prejudicial error was committed.

For the foregoing reason, the conviction herein must be reversed, and the cause remanded to the Court of Common Pleas for further proceedings according to law.

The judgment is reversed, and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

CORRIGAN and WHITE, JJ., concur.