OPINION
{¶ 1} This appeal is brought by Appellant Barry R. Satta from a judgment of conviction entered by the Marion County Common Pleas Court on a jury's verdict finding him guilty on two counts of aggravated murder in violation of R.C. 2903.01(B) (C) with a sexual motivation specification; burglary, a violation of R.C. 2911.12(A)(1); kidnapping, a violation of R.C. 2905.01(B)(1) with a sexual motivation specification; and Rape, a violation of 2907.02(A)(1)(b). For these offenses, Satta was sentenced to life in prison with no possibility of parole. Additionally, the State of Ohio cross-appeals the judgment of the trial court waiving the assessment of prosecutorial costs against the defendant-appellant.
 {¶ 2} On appeal, Satta raises eight assignments of error alleging that his trial was inherently unfair and that he was denied his constitutionally protected right of due process. On cross-appeal, the State asserts that the trial court erred when it failed to assess the cost of prosecution against the Appellant. Because we find no error amounting to a due process violation, we reject each of Satta's arguments and affirm the trial court's judgment entry of conviction and sentence. Furthermore, we find State's argument on cross-appeal to be well taken and reverse the trial court's decision to waive the cost of prosecution based on the Appellant's status as an indigent.
 {¶ 3} The record presents the following facts. In the early morning hours of August 27, 2000, seven-year old Bobbie Jo Barry was abducted from her bedroom at 817 N. State Street, Marion, Ohio. Bobbie Jo's siblings, with whom Bobbie Jo shared a room, discovered that she was missing at approximately 7a.m. and immediately alerted their father, Max Barry. Upon learning that Bobbie Jo was not in her bed, Barry conducted a quick search of the house and found muddy footprints on the downstairs bathroom floor just below an unlocked window. Barry looked outside of the window and observed muddy impressions in the ground below. Convinced that someone had taken his daughter, Barry ran to a nearby gas station and called the police. Upon arrival, police immediately began to comb 817 N. State Street for evidence. Barry informed police that he last saw Bobbie Jo at approximately 4 a.m. that morning when he looked in on her before going to bed. Meanwhile police and local volunteers initiated a massive countywide search for Bobbie Jo.
 {¶ 4} On Monday August 28, a private citizen called the Marion Police to report a suspicious sleeping bag in the woods off to the side of Burris Drive in Marion. Police arrived on the scene and found the dead body of a young girl inside of the sleeping bag. The young girl was naked from the waist down and her head was covered with a plastic grocery bag. Further examination of the body revealed numerous bruises, lacerations and evidence of sexual abuse. A necktie and speaker wire were found wrapped around the young girl's neck. Within a few hours of discovery, Bobbie Jo's parents identified the body as belonging to their missing daughter.
 {¶ 5} The defendant-appellant became a primary suspect in Bobbie Jo's abduction and murder after police found the name "Barry S" printed inside of the sleeping bag in which Bobbie Jo was found. Barry Satta was a long time friend of Max Barry, Bobbie Jo's father. Barry told police that Satta and another friend, John Daniels, had stopped by 817 N. State Street at approximately 12:30 a.m. on August 27, 2000, the morning of Bobby Jo's abduction. At trial, Barry testified that he, Satta and Daniels snorted crushed Ritalin in Barry's upstairs bedroom and that Satta and Daniels left approximately five minutes after their arrival. Additionally, Barry testified that at approximately 4:30 am that same morning, as he sat on his bed smoking a cigarette, he saw a black Lincoln drive down the alleyway next to his house. Barry stated that he recognized the car as belonging to Satta and figured that Satta had probably been out with somebody and was trying to establish an alibi for his girlfriend Phyllis. Consequently, he thought nothing of Satta's presence and soon thereafter went to sleep.
 {¶ 6} When questioned, Satta told police that after he and Daniels left Max Barry's house the morning of August 27, they went to various bars until closing time. Satta stated that he took Daniels home and then went to the residence of his friend, Lori Cassell. After leaving Cassell's, Satta said that he called home to find that Phyllis McCoy, with whom he lived at 1921 Harris Drive, had become ill and had gone to her Mothers. At that point, Satta stated that he went to McCoy's mother's house, left a note on McCoy's car, and then at approximately 7a.m. went to the cemetery to visit his deceased parents gravesite.
 {¶ 7} McCoy testified that at 3:40 a.m. on August 27, she telephoned John Daniels in search of Satta. Daniels told her that Satta was not with him and had dropped him off. Phyllis testified that she subsequently started to feel ill so she awakened her daughter and went to her mother's house. According to Phyllis, she drove by the Barry house on the way to her mother's in the hopes of spotting Satta. Phyllis testified that she observed the 817 N. State Street house from a little after 4a.m. until approximately 4:50 a.m. and did not see any cars coming or going. Phyllis McCoy testified that at 9 a.m. that same morning, she found Satta sleeping in a vacant house he owned at 795 W. Center Street.
 {¶ 8} Police obtained a search warrant for 795 W. Center Street and during the search of an upstairs bedroom found a pair of child-sized shorts and panties, later identified as Bobbie Jo's. Police also found speaker wire, knotted rope, cut neckties with knots, sexual lotions and sexually explicit magazines. Additionally, police found an abundance of orange foam material consistent with material found both in the sleeping bag and on Bobbie Jo's body. Several neighbor's on W. Center Street told police that they observed Satta either approaching or departing 795 W. Center Street at various times on Sunday, August 27. One witness, who lived two doors down from 795 W. Center Street, testified that sometime between 4a.m. and 5:30 a.m. on August 27, she heard a little girl scream followed by a man's voice telling her to shut up and that she'd only make things worse for herself.
 {¶ 9} Meanwhile, a forensic examination of four fingerprints lifted from the bathroom windowsill at 817 N. State Street, conducted by the State Bureau of Criminal Investigation (BCI), concluded that the prints belonged to Satta. Additionally, BCI concluded that the DNA profile of semen taken from Bobbie Jo's vagina matched Satta's DNA profile, excluding all but one in twelve million Caucasians. Furthermore, a semen sample lifted from the sleeping bag contained a partial DNA profile matching Satta's to the exclusion of all but 1 in 127 persons. Finally, police found pubic hair, later determined to match Satta's pubic hair on Bobbie Jo's body and inside of the sleeping bag in which she was found.
 {¶ 10} Consequently, Barry Satta was indicted for two counts of aggravated murder with death penalty specifications, burglary, kidnapping, and rape on August 31, 2000. After numerous pre-trial hearings and motions, the case proceeded to a jury trial commencing on May 9, 2001. On June 2, 2001 the jury found Satta guilty of all counts and all specifications. On June 7, 2001 that same jury rejected the death penalty and recommended that Satta serve life in prison without the possibility of parole. On June 13, 2001 the trial court entered judgment accordingly. Over the State's objections, the trial court waived the assessment of prosecutorial costs against Satta based on his status as an indigent. It is from these June 13, 2001 judgments that both the Appellant/Cross-Appellee and Appellee/Cross-Appellant appeal.
 First Assignment of Error {¶ 11} The trial court erred by failing to strike the jurorKimlyn Nicole Queen in violation of the Fifth, Sixth, Eighth andFourteenth Amendments to the United States Constitution.
 {¶ 12} In his first assignment of error, Appellant argues the trial court committed reversible error when it overruled his motion to exclude juror Kimlyn Nicole Queen for cause. According to Appellant, Queen demonstrated bias in favor of police officers and medical professionals and repeatedly declared that she could not promise to set aside her emotions and judge the case solely on the facts.
 {¶ 13} In support of his position, Appellant relies on State v.Nields, 93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d 859 which he cites for the proposition that a trial court must excuse a prospective juror who has been challenged for cause if the court has any doubt as to the juror being entirely unbiased. The following is an excerpt from theNields decision: "Trial courts have discretion in determining a juror's ability to be impartial. R.C. 2313.42(J) contemplates that `good cause' exists for removal of a prospective juror when `he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court.' A prospective juror who has been challenged for cause should be excused `if the court has any doubt as to the juror's being entirely unbiased.' However, a `ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary * * *'" Id at 20-21. (citations omitted) The Neilds court further noted, "deference must be paid to the trial judge who sees and hears the juror." Id at 21, citing Wainwright v. Witt (1985), 469 U.S. 412,426, 105 S.Ct. 844. Therefore, a trial court's determination as to whether to disqualify a juror for cause is not to be reversed on appeal absent an abuse of discretion. Burk v. Matthews (1990), 53 Ohio St.3d 161, syllabus.
 {¶ 14} In the matter sub judice, prior to ruling on Appellant's motion to exclude Queen for cause, the trial court posed the following questions to Queen:
 {¶ 15} "The Court: * * * [D]o you think that you could view the situation and the circumstances and the evidence against Mr. Satta with an open mind?"
 {¶ 16} KNQ: Yes.
 {¶ 17} * * *
 {¶ 18} The Court: Do you think just because an officer has a uniform on and they are under oath, they absolutely are going to tell the truth?"
 {¶ 19} KLQ: No"
 {¶ 20} Moreover, at the outset of the voir dire of prospective juror Queen, the trial court posed the following question:
 {¶ 21} "The Court: Upon the conclusion of the evidence, the Court would instruct the jury on the law that applies to this case. Is there any reason why you would be unable or unwilling to follow the law as its given to you by the court?
 {¶ 22} KNQ: No, sir."
 {¶ 23} Based on the above questions and responses, we are unable to conclude that trial court abused its discretion when it overruled the Appellant's motion to exclude for cause. Juror Queen unambiguously expressed an ability to view the evidence with an open mind and to then apply the law as the court instructs. Accordingly, Appellant's first assignment of error is overruled.
 Second Assignment of Error {¶ 24} The trial court erred by permitting the prosecutor toengage in ad hominem attacks on defense counsel during closing argumentin violation of the Fifth, Sixth and Fourteenth Amendments to theUnited States Constitution.
 {¶ 25} In his second assignment of error Appellant raises allegations of prosecutorial misconduct based on remarks made during the State's final argument in rebuttal. Specifically, Appellant alleges that the prosecutor accused defense counsel of "slanting" the facts, "misstating" facts and "changing" the facts.
 {¶ 26} Initially, we note that Appellant's trial counsel failed to object to the remarks raised on appeal and therefore pursuant to Crim.R. 52(B) all but plain error is waived. To reverse a conviction based on plain error, we must conclude that but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Furthermore, a close reading of the record reveals at least four instances in which Appellant's trial counsel used the term "slant" in the very context in which Appellant now alleges impropriety. And while the principle of invited error means that a party cannot complain of his opponent's argument to the jury where it amounts only to a reply in kind to matters introduced in his own argument, for the sake of judicial economy we will proceed with our review for plain error. See State v.Swanson (1967), 9 Ohio App.2d 60, 69-70, 222 N.E.2d 844; State v.Woodruff (1983), 10 Ohio App.3d 326, 327.
 {¶ 27} A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. State v.Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883; citing Berger v.United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, overruled on othergrounds, Stirone v. United States (l960), 361 U.S. 212, 80 S.Ct. 270. However, a remark may be improper but nevertheless fail to rise to the level of reversible error. "[T]he test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." State v.Twyford, 94 Ohio St.3d 340, 2002-Ohio-894, 763 N.E.2d 122 (citations omitted). Thus, prosecutorial misconduct will not be grounds for reversal unless it so tainted the proceedings that it deprived the defendant of a fair trial. State v. Bowman, Marion App. No. 9-01-47, 2002-Ohio-3391, ¶ 16.
 {¶ 28} The issue now before this court is the propriety of the terms "misstatement" and "slant" and whether their use amounts to an improper accusation of lying or fabricating[1] and if so, whether without those terms the outcome of the trial would have been otherwise. When examined in the context of the prosecution's entire argument on rebuttal, we are unable to conclude that the remarks rendered by the prosecution amount to an accusation of lying or fabrication. "Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn there from." State v. Richey (1992),64 Ohio St.3d 353, 362, 595 N.E.2d 915, abrogated on other grounds byState v. McGuire, 80 Ohio St.3d 390, 1997-Ohio-335, 686 N.E.2d 1112. The overwhelming portion of the prosecution's remarks were within the latitude afforded him.
 {¶ 29} Even if we were to determine otherwise, plain error is absent here. None of the cited remarks, even if arguably inappropriate, were so prejudicial and "outcome-determinative so as to constitute plain error" and deny appellant a fair trial. State v. Ballew, 76 Ohio St.3d 244,254-255, 1996-Ohio-81, 667 N.E.2d 369. Furthermore, we are bound to conclude that the jury heeded the trial court's instructions, which included a specific admonition that closing arguments were not to be considered as evidence. Accordingly, Appellant's second assignment of error is overruled.
 Third Assignment of Error {¶ 30} The trial court erred in permitting evidence of prejudicial`other acts' thereby denying Mr. Satta his right to due process of law.
 {¶ 31} In his third assignment of error, Appellant argues that the trial court admitted certain pieces of inadmissible character evidence in violation of Evid.R.404. Specifically, Appellant argues that drugs, drug paraphernalia, sexual lotions, pornographic magazines, pornographic videotapes and a photograph of these items collected from the upstairs bedroom of 725. W. Center Street were admitted for the purpose of demonstrating Appellant's character rather than to prove any material issue in the case. At trial, Appellant objected to the admissibility of these items as in violation of Evid.R. 403 but did not raise an objection pursuant to Evid.R.404. Therefore pursuant to Crim.R. 52(B) all but plain error is waived on the issue of character evidence in violation of Evid.R.404.
 {¶ 32} Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he is on trial is not admissible to show that the defendant acted in conformity with his bad character. State v. Mann (1985), 19 Ohio St.3d 34,36, 482 N.E.2d 592; State v. Curry (1975), 43 Ohio St.2d 66, 68-69,330 N.E.2d 720. Other acts evidence is never admissible when its only purpose is to establish that the defendant committed the act alleged in the indictment. State v. Flonnory (1972), 31 Ohio St.2d 124,285 N.E.2d 726, paragraph two of the syllabus. Exceptions to this general rule are set forth in Evid.R. 404(B):
 {¶ 33} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 34} Further exceptions are found in R.C. 2945.59 which states: "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 35} Because R.C. 2945.59 and Evid.R.404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, the Ohio Supreme Court has held that they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. State v. Broom (1988), 40 Ohio St.3d 277, 281-282,533 N.E.2d 682; State v. Nields (2001), 93 Ohio St.3d 6, 22,2001-Ohio-1291, 752 N.E.2d 859; State v. DeMarco (1987), 31 Ohio St.3d 191,194, 509 N.E.2d 1256. The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crimes charged in the indictment. Statev. Nields (2001), 93 Ohio St.3d at 22, See also State v. Schaim (1992),65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661. Moreover, "[i]f the basis upon which other act evidence is admissible under R.C. 2945.59 and Evid.R. 404(B) is interpreted too loosely, there is no limit to what other acts evidence is admissible." State v. Clemons (1994),94 Ohio App.3d 701,711, 641 N.E.2d 778.
 {¶ 36} Inherent in the analysis of other acts testimony is the understanding that Evid.R.404 is a rule of relevancy; a rule that states that a person's character is always irrelevant to the issue of guilt. In order to qualify under an exception pursuant to Evid.R.404(B), evidence tending to show bad character must be relevant to prove some other issue at trial such as motive, intent, identity, or the absence of accident or mistake. Evidence of other acts will be admissible "not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts."State v. DeMarco (1987), 31 Ohio St.3d at 194, quoting State v. Burson
(1974), 38 Ohio St.2d 157, 158, 311 N.E.2d 526. (emphasis added)
 {¶ 37} Here, the prosecution claims that the sexually explicit items and various drug related items were offered to rebut Appellant's claim that other people had access to the home on 795 W. Center Street. The prosecution further claimed that the evidence in question rebutted the defense position that that the condition of 795 W. Center Street was such that no one would want to sexually molest a child at that location and that the home was used as a storage facility rather than a place for sexual activity. According to the prosecution's brief on appeal, "The evidence of drug paraphernalia in the upstairs bedroom at 795 W. Center Street helped demonstrate that this was not just a storage facility."
 {¶ 38} While we question the ability of the evidence in question to prove the matters the state cites, the overlying issue is that the state may not circumvent Evid.R.404 by anticipating a defense in its case in chief. Any rebuttal evidence offered by the prosecution must be reserved until the defendant has raised the issue. Columbus v. Corne
(1982), 7 Ohio App.3d 344, State v. Snowden (1976), 49 Ohio App.2d 7. Alternatively, the state argues that the evidence in question conforms with 404(B) as it goes to Appellant's opportunity, preparation and identity. While we agree that the sexual items could be reasonably found to be relevant to Appellant's preparation to commit the crimes charged, we find no such relevance with respect to the drug paraphernalia.
 {¶ 39} The trial court admitted into evidence five items relating to illegal drugs found on Appellant's property; two wooden pipes, a glass vial filled with marijuana seeds, a baggie of seeds and capsule, and a pair of pincer scissors also known as a "roach clip." Because these items tend to show Appellant's bad character and are not relevant to prove some other issue at trial such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, the trial court erred by admitting them during the state's case in chief. Nevertheless, in light of the overwhelming physical evidence in this case, we cannot conclude that but for this error the outcome of the trial would have been different. Therefore, we do not find plain error and Appellant's third assignment of error is overruled.
 Fourth Assignment of Error {¶ 40} The trial court erred by permitting the State to introduceexpert evidence that was not relevant or helpful to the determination ofthe case, thereby violating Mr. Satta's right to due process.
 {¶ 41} In his fourth assignment of error Appellant argues that the testimony of two expert witnesses, proffered by the prosecution, was irrelevant and therefore inadmissible. Specifically, Appellant argues that DNA evidence from a "rape kit" collected from Bobbie Jo's body was not properly sealed and therefore testimony concerning this evidence is inadmissible. Additionally, Appellant claims that testimony regarding a comparison of hair samples taken from Bobbie Jo's body and 795 W. Center Street to hairs from Appellant's body was irrelevant because it failed to describe the shared features as uncommon, common or even universal. Defense counsel did not raise objections at trial to the status of either witness as an expert or to the relevance of their subsequent testimony. Therefore pursuant to Crim.R. 52(B), all but plain error is waived.
 {¶ 42} Expert testimony is permissible when (1) the witness is properly qualified as an expert, and (2) the testimony is helpful to the trier of fact for purposes of understanding other evidence or making a determination of a fact in issue. State v. Martens (1993),90 Ohio App.3d 338, 345, 629 N.E.2d 462, citing State v. Davis (1989),64 Ohio App.3d 334, 341, 581 N.E.2d 604, 608. Trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion. State v. Hartman (2001),93 Ohio St.3d 274, 754 N.E.2d 1150. Here, the Appellant does not raise issues with respect to the qualifications of the prosecution's experts and does not directly attack the relevance of their testimony in general. Instead, Appellant attacks the reliability of specific tests conducted by Michelle Yezzo, a forensic scientist for B.C.I. and Steve Wiechman, a DNA expert for B.C.I.
 {¶ 43} Appellant's argument clearly confuses the concepts of relevance and reliability. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401; Brown v. City of Cleveland (1981)66 Ohio St.2d 93, 420 N.E.2d 103. "Reliable evidence" or "credible evidence" is that evidence having a reasonable probability of truth. OurPlace, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571,589 N.E.2d 1303. Relevancy and admissibility are matters of law and are determined by the court. Evid.R.104(A). Trial courts have great discretion when deciding matters of relevance and admissibility. Statev. Davis (1988) 49 Ohio App.3d 109, 550 N.E.2d 966. Once determined to be relevant and admissible by the court, the reliability of the evidence or credibility of the witness are issues left primarily to the trier of fact, in this case the jury. State v. Grant (1993), 67 Ohio St.3d 465,477, 620 N.E.2d 50; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. Admittedly, the reliability of evidence plays a key role in a trial court's initial determination of admissibility. However, the standard for admissibility is whether the evidence is reliable to a reasonable degree rather than to an absolute degree as suggested by Appellant.
 {¶ 44} The trial court in this matter did not commit error when it determined that the testimony regarding DNA testing and a hair sample analysis was relevant and admissible. Obviously, the existence of Appellant's DNA and hair on Bobbie Jo's body has the tendency to make his identity as her killer more probable or less probable than it would be without such evidence. DNA testing has been found to be reliable to the degree that it is admissible in criminal prosecutions, while the credibility of the D.N.A testing itself is a matter to determined by the trier of fact. State v. Pierce (1992), 64 Ohio St.3d 490, 597 N.E.2d 107,superceded by Rule on other grounds as stated in State v Nemeth,82 Ohio St.3d 202, 1998-Ohio-376, 694 N.E.2d 1332. Additionally, hair sample comparisons have been determined to be reliable to the degree that they are admissible in criminal prosecutions. State v. Millisor (August 4, 1999), Marion App. No. 9-98-69.
 {¶ 45} Here, the prosecution established a chain of evidence for both the DNA and hair samples, sufficiently indicating their reliability. Thereafter, the integrity of the seals on the "rape kit" delivered for DNA testing and the thoroughness of Yezzo's testimony regarding her analysis were matters to be argued to and ultimately reconciled by the jury. Appellant had every opportunity to point out to the jury any perceived weaknesses in the DNA evidence and the hair analysis. We find no error in the trial court's admission of the expert testimony and no prejudice to the Appellant. Accordingly, Appellant's fourth assignment of error is overruled.
 Fifth Assignment of Error {¶ 46} The trial court erred by instructing jurors that theyshould convict Mr. Satta if they were merely "firmly convinced ofthe truth of the charge."
 {¶ 47} In his fifth assignment of error, Appellant maintains that the jury instruction regarding the standard for "beyond a reasonable doubt" was incorrect and therefore deprived him of a fair trial. A reviewing court will not reverse a conviction in a criminal case due to jury instructions unless it is found that the jury instructions amount to prejudicial error. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus. Jury instructions should outline the issues, state the applicable principles of law, and clarify the jury's role in the case. Bahm v. Pittsburgh Lake Erie Rd. Co. (1966), 6 Ohio St.2d 192. A jury instruction is proper when it adequately informs the jury of the law. Linden v. Bates Truck Lines, Inc. (1982), 4 Ohio App.3d 178.
 {¶ 48} With respect to criminal prosecutions, R.C. 2901.05(B) provides that as part of its charge to the jury, the trial court shall read the definitions of "reasonable doubt" and "proof beyond a reasonable doubt," contained in R.C. 2901.05(D) which in turn states:
 {¶ 49} "`Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."
 {¶ 50} In the matter sub judice, Appellant concedes that the trial court read the statutory definition verbatim, but argues that the statute itself is unconstitutional since it does not adequately convey a proper standard. Appellant argues that the statutory instruction is "too lenient" and sounds more like an instruction on the "clear and convincing" standard. The Ohio Supreme Court entertained this very argument in State v. Frazier (1995), 73 Ohio St.3d 323, 1995-Ohio-235,652 N.E.2d 1000, certiorari denied 116 S.Ct. 820, 516 U.S. 1095,133 L.Ed.2d 763 and determined that the R.C. 2901.05(D) definition of reasonable doubt accurately imparted the concept of reasonable doubt and did not diminish the state's requirement to prove guilt beyond reasonable doubt. Id at 330. Upon this authority that we overrule Appellant's fifth assignment of error.
 Sixth Assignment of Error {¶ 51} The trial court erred by failing to select a jury from alist of all licensed drivers rather than registered voters.
 {¶ 52} In his sixth assignment of error, Appellant contends that drawing the jury venire solely from registered voters deprived him of hisSixth Amendment right to a jury drawn from "a fair cross section of the community." Taylor v. Louisiana (1975), 419 U.S. 522, 527, 95 S.Ct. 692. Appellant insists that a jury drawn from a list of all licensed drivers would have been more appropriate. We disagree.
 {¶ 53} According to R.C. § 2313.08(B), "In the selection of names for the annual jury list, the commissioners may select all names from the list of electors certified by the board of elections pursuant to section 2313.06 of the Revised Code or may select all names from the list of qualified driver licensees certified by the registrar of motor vehicles pursuant to section 2313.06 of the Revised Code and from the list of electors certified by the board of elections pursuant to section2313.06 of the Revised Code." (emphasis added)
 {¶ 54} The Ohio Supreme Court has consistently upheld the calling of venires from voter registration lists as in conformity with theSixth Amendment right to a jury drawn from a fair cross section of the community. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126,767 N.E.2d 216, ¶ 106; State v. Moore (1998), 81 Ohio St.3d 22, 28,689 N.E.2d 1; State v. Johnson (1972), 31 Ohio St.2d 106, 285 N.E.2d 751, paragraph two of the syllabus.
 {¶ 55} Accordingly, we find Appellant's argument to be contrary to well established law and furthermore fails to allege any prejudiced sustained as a result of the venire. In order to secure reversal of a judgment, an appellant must not only show some error but must also show that that error was prejudicial to him. Smith v. Flesher (1967),12 Ohio St.2d 107, 233 N.E.2d 137. Insofar as Apellant has failed to show error or prejudice, his sixth assignment of error is overruled.
 Seventh Assignment of Error {¶ 56} The trial court erred by denying Mr. Satta's motion todismiss because Ohio's Death Penalty Scheme does not narrow the categoryof offenders eligible for the death penalty.
 {¶ 57} In his seventh assignment of error, Appellant asserts that the trial court should have granted his motion to dismiss, filed prior to trial, since Ohio's death penalty statute is rendered unconstitutional by its failure to narrow the class of death-eligible defendants. Appellant lacks standing to attack the constitutionality of Ohio's death penalty statute where he was not sentenced to death. State v. Huertas (1990),51 Ohio St.3d 22, 32.See e.g. State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720, State v. Forney (June 8, 1983), Summit App. No. 10928;State v. Vaughn (June 19, 1985), Summit App. No. 11901. Accordingly, we will not entertain Appellant's seventh assignment of error.
 Eighth Assignment of Error {¶ 58} The cumulative effect of the trial court's errors requirethat Mr. Satta be granted a new trial.
 {¶ 59} In his final assignment of error Appellant generally avers that the trial court made errors which prejudiced him. Appellant fails to submit case law or anything resembling an argument as required by Ohio Rule of Appellate Procedure 16(A)(7). For this reason and because we have found no errors thus far, we decline to address Appellant's final assignment of error.
 Appellee/Cross-Appellant's Assignment of Error {¶ 60} The trial court erred by failing to include in the sentencethe cost of prosecution and failed to render a judgment against thedefendant for such costs, all as required as R.C. 2924.12.
 {¶ 61} In its sole assignment of error on cross appeal, the state argues that the trial court committed reversible error when it failed to assess the cost of prosecution against Appellant. We find the state's argument to be well taken.
 {¶ 62} R.C. 2924.12 states: "In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. If a jury has been sworn at the trial of a case, the fees of the jurors shall be included in the costs, which shall be paid to the public treasury from which the jurors were paid." (emphasis added) "It is axiomatic that when it is used in a statute, the word "shall" denotes that compliance with the commands of that statute ismandatory." Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917,65 Ohio St.3d 532, 1992-Ohio-17, 605 N.E.2d 368. Consequently, R.C. 2924.12 clearly requires the trial court to assess the cost of prosecution against a convicted criminal defendant.
 {¶ 63} Appellant/Cross-Appellee argues that the trial court had the authority to waive the cost of prosecution pursuant to R.C. 2949.092. That section, entitled Waiver of Additional Court Costs, provides: "If a person is convicted of or pleads guilty to an offense and the court specifically is required, pursuant to section 2743.70 or 2949.091 of the Revised Code or pursuant to any other section of the Revised Code, to impose a specified sum of money as costs in the case in addition to anyother costs that the court is required or permitted by law to impose inthe case, the court shall not waive the payment of the specified additional court costs * * * unless the court determines that the offender is indigent and the court waives the payment of all court costs imposed upon the offender."
 {¶ 64} Appellant/Cross-Appellee misinterprets R.C. 2949.092 since that section explicitly applies only to those "additional costs" imposed pursuant to R.C. 2743.70 or R.C. 2949.091. For its part, R.C. 2743.70
defines these "additional costs" as costs to fund reparations payments. These "additional costs" are separate from those addressed in R.C. 2924.12. Therefore, the language of R.C. 2949.092 does not supersede or conflict with the mandatory rule established by R.C. 2924.12. Therefore, we find that trial court was without authority to forego or waive the assessment of costs against the Appellant/Cross-Appellee. Appellee/Cross-Appellant's assignment of error is therefore sustained.
 {¶ 65} For the reasons stated, it is the order of this Court that the judgment of the Court of Common Pleas, Marion County is herebyAFFIRMED in part, REVERSED in part, and REMANDED to that court for further proceedings in accordance with this opinion.
Judgment reversed in part, affirmed in part and cause remanded.
 HADLEY and WALTERS, JJ., concur.
[1] See State v. Roberts (2000), 139 Ohio App.3d 757, 745 N.E.2d 1057;State v. Braxton (1995), 102 Ohio App.3d 28, 656 N.E.2d 970; State v.Smith (1984), 14 Ohio St.3d 13, 470 N.E.2d 888 (Each holding that it is improper for a prosecutor to directly accuse a defense counsel of lying or fabricating evidence).