[Cite as *State v. Singleton*, 2013-Ohio-1440.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98301**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PHILLIP SINGLETON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560201

**BEFORE:** Keough, P.J., E.A. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** April 11, 2013

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio 44103-1124

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Maxwell M. Martin
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** Defendant-appellant, Phillip Singleton, appeals his convictions for robbery, felonious assault, theft, and petty theft. Finding no merit to the appeal, we affirm.

**{¶2}** In March 2012, Singleton was indicted with aggravated robbery, two counts of robbery, felonious assault, theft, petty theft, and having a weapon while under disability. The aggravated robbery, robbery, and felonious assault charges included one- and three-year firearm specifications, a notice of prior conviction, and a repeat violent offender specification. Prior to the commencement of a jury trial, Singleton stipulated to the prior conviction and elected to bifurcate the trial, waiving his right to a jury trial on the charge of having a weapon while under disability and the repeat violent offender specifications. The remaining charges were tried to the jury, where the following evidence was presented.

**{¶3}** In the evening of December 4, 2011, Singleton and the victim, Rayshawn Jordan, went to Singleton's girlfriend's house located at 545 East 115th Street in Cleveland. Jordan testified that prior to this evening he did not know Singleton and that he had never been to this residence. Before arriving at that residence, Jordan and Singleton went to a store where Jordan bought some beer. Testimony at trial indicated they went to another house to drink the beer prior to going to the East 115th Street address.

{¶4} When they arrived at the East 115th house, Singleton told Jordan to wait on the porch while he went inside to check if it was okay for Jordan to come inside. Jordan testified that he waited on the porch, but Singleton never came back out. He knocked on the door, but then turned around and "saw something like silver that he had hit me with and knocked me out." Jordan testified that he was struck in the eye with the handle of the silver object, which he believed was a gun. According to Jordan, he was on the porch when he was struck and knocked out, but when he regained consciousness, he was lying on the lawn. Jordan initially testified that the had no recollection how he got from the porch to the lawn, but later testified that he heard two voices — someone was dragging him while the other was rummaging through his pockets.

{¶5} Jordan testified that he was awakened by the man from across the street who later called the paramedics. While speaking with paramedics, Jordan believed he had been robbed because his personal belongings in his pockets were missing, including his phone and charger, earplugs, money, and wallet, which contained his identification, credit card, bank cards, birth certificate, and social security card. Jordan testified he had an injury under his eye — "just a little gash like right above my cheekbone."

{¶6} The paramedics called the police. When the police arrived, Jordan told the officers that he had been robbed. According to Jordan, the officers went inside the house and brought two men outside, including Singleton. Although Jordan testified that he told the officers that Singleton had robbed him, this statement was not included in his written statement. Jordan recovered all of his property that evening except his money.

**{¶7}** Charles Smith, who also lived on East 115th, testified that on December 4, he saw Singleton and another male across the street on the porch of 545 East 115th Street. According to Smith, eight people lived at this address. About twenty minutes later, he saw a male, later identified as Jordan, lying on the ground in front of the house; another male was hunched over him. The unidentified male then stood up and ran around an abandoned house. Smith stated he was approximately 100 to 120 feet away when he witnessed this, and could not identify who the other male was. According to Smith, Jordan got up, stumbled from the yard toward the house, and then sat on the porch. Smith testified that he called to Jordan, but got no response. Jordan then walked over to him, stating that he did not know his name, where he lived, or how he got to where he was. According to Smith, Jordan "appeared to be in a daze after being knocked out," so he called for an ambulance. Smith testified that Jordan told him that he may have been robbed.

**{¶8}** Officer Raul Atanacio testified that he responded to a call for a male robbed at gunpoint on East 115th. When he arrived at the scene, he saw Jordan being treated by paramedics. According to Officer Atanacio, Jordan initially seemed groggy and disoriented. Atanacio interviewed Jordan at the scene and Jordan gave him a description of the person who robbed him.

**{¶9}** Officer Atanacio testified that he was working with Officer Dooley that evening. Also assisting in the investigation were Officers Cruz and Maxel. Officer Atanacio testified that Officers Cruz and Dooley found Singleton hiding in a closet inside

the residence. Officer Atanacio testified that Officer Cruz told him that Jordan's missing cell phone and charger were found in the hallway next to the closet where Singleton was discovered. Singleton was then handcuffed and escorted outside. According to Officer Atanacio, when Singleton was brought out of the house, Jordan asked Singleton why he did "that to him."

{¶10} Officer Atanacio then patted Singleton down and recovered Jordan's wallet, identification, and social security card from his pockets. When Officer Atanacio asked Singleton why he had Jordan's "stuff" on his person, Singleton replied, "[h]e owed me money, that's why I took his shit."

{¶11} On cross-examination, Officer Atanacio admitted that his report did not contain important details such as Jordan's direct question to Singleton about why he did this to him, and the names of potential witnesses from the East 115th residence. Additionally, he admitted he did not conduct a cold stand with Smith to see if the man standing over Jordan in the yard was Singleton. Finally, no fingerprints were lifted from any of Jordan's property prior to it being returned to him.

{¶12} Officer Atanacio also testified about a second story that Jordan told him on the evening of the offense. According to Officer Atanacio, Jordan told him that a male wearing a gray hoodie and blue jeans pointed a weapon at him while he and Singleton were walking to the East 115th residence. Jordan denied telling the officer this story.

{¶13} Detective Albert Oliver testified that he took Jordan's written statement. In the statement, Jordan stated that "someone robbed him," but did not indicate that

"Singleton robbed him." Detective Oliver testified that because the report did not indicate any witnesses, he did not go to 545 East 115th Street residence. He admitted that (1) no fingerprinting was done because items found on a suspect are usually not fingerprinted, (2) there was not a second suspect in the case, and (3) Jordan never told him that Singleton robbed him.

{¶14} At the close of evidence, the trial court denied Singleton's Crim.R. 29 motion for judgment of acquittal. The State then requested that the trial court give an instruction to the jury on complicity. In overruling Singleton's objection to the requested instruction, the trial court found the instruction would be proper because only some of Jordan's property was found on Singleton's person and Jordan testified that he thought there were two people involved.

{¶15} The jury found Singleton not guilty of aggravated robbery, and all firearm specifications. However, Singleton was found guilty of felonious assault, robbery, theft, and petty theft. The trial judge found Singleton not guilty of having a weapon while under disability, but guilty of the repeat violent offender and notice of prior conviction specifications. Singleton was sentenced to a total of three years in prison.

{¶16} He now appeals, raising nine assignments of error, which will be discussed together and out of order where appropriate.

## I. Jury Instructions

{¶17} In his first, second, third, and fourth assignments of error, Singleton contends the trial court erred in its rendering of jury instructions. Specifically, he

contends that the trial court (1) committed plain error, in violation of Crim.R. 30, and denied him due process, by submitting "grossly incomplete" written instructions to the jury; (2) committed plain error by failing to include in its charge to the jury a general instruction on credibility and a specific instruction on the use of prior convictions in determining credibility; (3) committed plain error by giving a jury instruction on the issue of credibility, which invaded the province of the jury; and (4) committed prejudicial error by giving an instruction on complicity where the indictment did not allege complicity and where the victim identified him as the principal in the commission of the alleged crimes.

{¶18} Where Singleton failed to object to the manner in which the court gave the jury instructions, plain error must be found to reverse his convictions and for a new trial to be ordered. Crim.R. 30(A). In order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*. at paragraph three of the syllabus; Crim.R. 52(B).

## A.   Crim.R. 30

{¶19} In his first assignment of error, Singleton contends that the trial court violated Crim.R. 30 and denied him due process by submitting "grossly incomplete" written instructions to the jury.

{¶20} Crim.R. 30 provides in pertinent part,

(A) Instructions; Error; Record.
At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

(B) Cautionary instructions.
At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case.

{¶21} The Ohio Supreme Court has held that the trial court is required to repeat all preliminary instructions at the end of trial. *State v. Comen*, 50 Ohio St.3d 206, 209-210, 553 N.E.2d 640 (1990).

If the preliminary or cautionary instructions include matters of law vital to the right of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed. Repeating instructions means fully instructing the jury on the law applicable to the case and not providing them simply with a cursory reminder of what was earlier provided in either the preliminary or cautionary instructions. Regardless of the length of trial, the court cannot assume the jury recalls or remembers the prior instructions.

Accordingly, we hold that before the taking of evidence, a trial court may give preliminary instructions to the jury appropriate for the jury's guidance in hearing the case. A court may also give cautionary instructions throughout the trial. After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.

*Id*. at 210.

{¶22} Even so holding, the Supreme Court maintained that it is incumbent on the appellant to demonstrate the prejudicial effect of the trial court's failure to repeat all instructions given throughout the course of trial. *Id.* The court found that "the proper procedure is for a trial court to explicitly follow Crim.R. 30 when instructing a jury," but it could not ignore the lack of prejudice demonstrated by the appellant. *Id.* The *Comen* court determined that because the appellant failed to demonstrate prejudice, it could find no reversible error. *See also State v. Millay*, 5th Dist. No. 11 CA 10 0090, 2012-Ohio-3776 (relying on *Comen* in finding no plain error in the trial court's failure to comply with Crim.R. 30; appellant did not demonstrate prejudice).

{¶23} We find the demonstration of prejudice equally lacking in this case. After the jury was empaneled and sworn in, but prior to opening statements, the trial court gave both preliminary and cautionary instructions. However, at the close of trial, the trial court did not repeat these instructions; rather, the court only read and submitted written

instructions to the jury on the elements and attendant definitions of each offense and included an instruction on complicity.

**{¶24}** Applying and reiterating the rationale stated in *Comen*, the best practice and the proper procedure would have been for the trial court to explicitly follow Crim.R. 30. Although the trial court failed to fully comply with Crim.R. 30, Singleton has not demonstrated prejudice, such that if the court repeated all the preliminary instructions at the end of the trial, the result of the proceeding would have been different. Instead, he makes a conclusory statement that the instructions submitted to the jury at the close of the case placed an undue emphasis on the instructions needed to convict, and diminished the importance of instructions needed to protect his constitutional rights. This statement does not withstand Singleton's burden of proving prejudice. Moreover, the jury's verdict evidences that it considered all the instructions given throughout the trial because they acquitted Singleton on the aggravated robbery charge and all firearm specifications — clearly not focusing only on convictions, but also on Singleton's constitutional right to hold the State to its burden of proof.

**{¶25}** Accordingly, the first assignment of error is overruled.

## B. Credibility

**{¶26}** In his second and third assignments of error, Singleton challenges the trial court's instruction on credibility, contending that critical portions of the general instruction on credibility are absent, including (1) the "tests" for determining credibility, (2) eyewitness testimony, and (3) the use of prior convictions in determining credibility;

he also contends that the instruction given on credibility invaded the province of the jury.

{¶27} As we previously discussed, the trial court did not give the jury written instructions of any of the preliminary or cautionary instructions that it orally gave to the jury prior to oral arguments or throughout the trial. Accordingly, our focus is on the oral instructions given by the court.

{¶28} Contrary to Singleton's assertion, a review of the record indicates that in its preliminary instructions, the court orally gave the jury a complete instruction on the "tests" for determining credibility. Section 409.05 of the Ohio Jury Instructions ("OJI") sets forth specific instructions regarding credibility, including that the jurors are the judges of fact, credibility, and weight of the evidence; jurors are to weigh the evidence by applying the tests of truthfulness; and they can believe or disbelieve all or part of any given witness's testimony. The trial court gave these specific instructions in its preliminary instructions. (Tr. 132-134.) Accordingly, the trial court gave a complete instruction on credibility and in accordance with OJI 409.05.

{¶29} Singleton next contends that the trial court failed to give an instruction on eyewitness testimony. Although the trial court did not give this instruction, the eyewitness in this case (Charles Smith) could not identify who he saw standing over the victim. Therefore, the "eyewitness" did not offer any testimony implicating or exonerating Singleton; the instruction would not have guided the jury in its deliberations on this issue. Therefore we find no error.

**{¶30}**   The third issue raised by Singleton concerns the court's failure to give an instruction on the use of prior convictions to determine credibility.   Singleton cites to OJI Section 401.25, which provides:

> 2. USE OF PRIOR CONVICTION: CREDIBILITY.   Evidence was received that the defendant was convicted of (describe prior conviction). That evidence was received only for a limited purpose.   It was not received, and you may not consider it, to prove the character of the defendant in order to show he acted in (conformity) (accordance) with that character.   If you find that the defendant was convicted of (describe conviction), you may consider that evidence only for the purpose of testing the defendant's (credibility) (believability) and the weight to be given the defendant's testimony.   It cannot be considered for any other purpose.

Singleton argues that this instruction was crucial "because the victim, whose credibility was vital to the State's case, had a extensive criminal record."   However, this instruction is given when the defendant testifies, not the victim.   In this case, Singleton did not testify; thus there was no plain error in the trial court's failure to give this instruction.

**{¶31}** Finally, Singleton contends that the court's jury instruction invaded the province of the jury when it advised them that "discrepancies in a witness' testimony or between his or her testimony and that of others does not necessarily mean that you should disbelieve a witness as people commonly forget facts or recollect them erroneously after the passage of time."   In support of his argument, he cites to *State v. Cunningham*, 105

Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504. The instruction challenged by Singleton is identical to the instruction the Ohio Supreme Court reviewed in *Cunningham*. *Id*. at ¶ 54. After reviewing the entire instruction, the Court concluded that the trial court did not commit any error, plain or otherwise, in giving this instruction. *Id*. at ¶ 57. "When the credibility instruction is viewed in its entirety, it is clear that the trial court did not instruct the jury to disregard discrepancies in the evidence. Rather, the court charged the jury to consider discrepancies and weigh their significance when determining credibility." *Id*.

{¶32} Just as in *Cunningham*, the trial court gave an appropriate instruction on credibility. A complete and plain reading of the entire charge regarding credibility clearly shows that the trial court gave the full and identical instruction the Ohio Supreme Court found appropriate in *Cunningham*, including the following instruction: "In considering a discrepancy in a witness's testimony, you should consider whether such discrepancy concerns an important fact or a trivial one." (Tr. 133.)

{¶33} Accordingly, we do not find that the instruction given by the trial court invaded the province of the jury when considering the instruction as a whole. Singleton's second and third assignments of error are without merit.

## C. Complicity

{¶34} In Singleton's fourth assignment of error, he contends that the trial count erred by giving an instruction on complicity because the indictment did not allege complicity and the victim identified Singleton as the principal in the commission of the

alleged crimes. Trial counsel did object to the instruction, thus properly preserving the issue for appeal under an abuse of discretion standard of review.

{¶35} A trial court has the discretion to determine whether the evidence adduced at trial was sufficient to require a corresponding jury instruction. *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. Such a decision will not be disturbed absent a finding that the trial court abused its discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Thus, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 219.

{¶36} R.C. 2923.03(F) provides that an accomplice to the commission of an offense shall be prosecuted and punished as if he were a principal offender. *State v. Read*, 11th Dist. No. 98-L-127, 1999 Ohio App. LEXIS 5932 (Dec. 10, 1999), *6. The plain language of R.C. 2923.03(F) states that a charge of complicity may be stated in terms of the complicity statute, R.C. 2923.03, or in terms of the principal offense. *Id*. Thus, pursuant to R.C. 2923.03(F), although the defendant was indicted and prosecuted as the principal offender, a jury instruction as to complicity could be given. *Id*., citing *State v. Tumbleson*, 105 Ohio App.3d 693, 696, 664 N.E.2d 1318 (12th Dist.1995).

{¶37} It is important to note that, per R.C. 2923.03(A), a defendant can engage in complicity while acting as the principal offender. *Read* at *7. "It is no defense to a charge under this section that no person with whom the accused was in complicity has

been convicted as a principal offender." *See State v. Graven*, 52 Ohio St.2d 112, 115, 369 N.E.2d 1205 (1977), citing R.C. 2923.03(B). The State has a burden of proving each element of a crime beyond a reasonable doubt. Consequently, in order to convict an offender of complicity, the State need not establish the principal's identity. *State v. Perryman*, 49 Ohio St.2d 14, 27, 358 N.E.2d 1040 (1976). Pursuant to R.C. 2923.03(C), the state need only prove that a principal committed the offense. *Id.*

{¶38} In this case, the evidence adduced at trial was sufficient to warrant an instruction on complicity. The victim testified that he was struck in the face with a gun. He stated that after he was hit, he heard two voices, and felt someone dragging him while another was going through his pockets. This testimony was sufficient for the trial court to exercise its discretion and give a complicity instruction. Accordingly, a review of the record indicates that the trial court properly instructed the jury that Singleton could be found guilty of complicity of the offenses under indictment. It was inconsequential that Singleton was indicted and prosecuted for the principal offenses rather than under the complicity statute. R.C. 2923.03(F). His fourth assignment of error is therefore overruled.

## II. Hearsay

{¶39} In his fifth assignment of error, Singleton contends that the trial court committed plain error and violated his right of confrontation by admitting hearsay testimony.

**{¶40}** At trial, Officer Raul Atanacio testified that he was advised by Officer Cruz that Singleton was found hiding inside the closet and that the victim's cell phone and charger were found next to that closet. The State's sole rebuttal argument on appeal is "there is no indication that improper hearsay evidence was admitted at trial." We disagree and find that Officer Atanacio's testimony regarding what Officer Cruz told him is clearly inadmissible hearsay because it was an out of court statement used to prove the truth of the matter asserted — that the victim's phone and phone charger were discovered outside the closet where Singleton was found hiding. Evid.R. 801(C); Evid.R. 802; *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987).

**{¶41}** However, no objection was made at trial regarding this testimony, thus, we review this assignment of error under a plain error analysis. As previously stated, notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice" and the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 at paragraph three of the syllabus.

**{¶42}** In this case, Singleton has not demonstrated that the outcome of the trial would have been different but for the error in admitting this hearsay testimony. Even excluding this testimony from the jury's consideration, the jury also heard evidence that the victim's missing wallet, photo identification, and social security card were found inside Singleton's pockets when he was arrested. This evidence was sufficient to support the convictions involving any stolen property; accordingly, the testimony that the

victim's cell phone and charger were found next to the closet where Singleton was found was not crucial to the State's case.

{¶43} The testimony given by Officer Atanacio that Officer Cruz told him that Singleton was found hiding in a closet at the time of his arrest also does not rise to the level of plain error such that the outcome of the trial would have been different. Officer Atanacio testified that he interviewed Singleton after his arrest and Singleton explained to him why he was in the closet. Whether he was hiding in the closet or merely in the closet for some other reason is of no consequence when some of the items stolen from the victim were located in Singleton's pocket.

{¶44} Accordingly, we do not find that the trial court committed plain error in allowing the hearsay testimony, and the assigned error is overruled.

### III. Manifest Weight of the Evidence

{¶45} In his seventh assignment of error, Singleton contends that his convictions for felonious assault and robbery[1] are against the manifest weight of the evidence because the (1) victim's testimony was entirely suspect and contained material inconsistencies, (2) hearsay contributed to his conviction, (3) the police did not conduct a thorough investigation, and (4) the eyewitness stated the man standing over the victim was wearing a gray hooded sweatshirt, when Singleton was not.

{¶46} The State in its brief boldly asserts as its sole rebuttal argument that "[b]ecause there were no conflicts in the evidence presented at trial, there is nothing here

---

[1]Singleton does not raise any argument regarding his convictions for theft or petty theft.

that needs to be resolved one way or the other." However, even just a cursory reading of the trial transcript demonstrates inconsistent and conflicting testimony.

{¶47} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

{¶48} Singleton was found guilty of felonious assault, in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Singleton was also convicted of two counts of robbery, in violation of R.C. 2911.02(A)(1) and (2), which provides,

> [n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (1) [h]ave a deadly weapon on or about the offender's person or under the offender's control; or (2) [i]nflict, attempt to inflict, or threaten to inflict physical harm on another.

{¶49} It is without doubt that the police investigation in this case was lacking. The testimony at trial revealed that the officers admittedly failed to include important details about the crime in their reports, including the names of any potential witnesses and that Jordan expressly asked Singleton why he did this to him. The officers did not conduct a cold stand with the neighbor from across the street and did not fingerprint the

cell phone or charger prior to giving the property back to Jordan that evening. In fact, Officer Atanacio effectively admitted this was pretty much an open and shut case — he arrived on the scene and met with the victim who had just been robbed, the victim made a positive identification of suspect, the property was on the suspect's person, and the suspect admitted to the crime. No other investigation was done and no other witnesses were interviewed despite the fact that at least seven other people were in the house that evening and only some of Jordan's property was found in Singleton's pockets.

{¶50} Moreover, the jury heard inconsistent testimony from Jordan and testimony about his criminal history. However, witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 1996-Ohio-222, 661 N.E.2d 1068, and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. No. 93593, 2010-Ohio-4006, ¶ 16.

{¶51} Regarding Singleton's argument that hearsay contributed to his convictions, we have previously concluded that although Officer Atanacio's testimony was hearsay, the testimony was of no consequence because some of the stolen property was discovered in Singleton's pockets. Finally, and contrary to Singleton's assertion, Smith did not testify that the suspect hunched over Jordan was wearing a gray hoodie. Smith testified

that he could not identify the unidentified male and never testified about a physical description.

{¶52} Despite the lack of investigation in this case, the hearsay, and Jordan's inconsistent testimony, the jury could not ignore the undisputed facts that Jordan was assaulted outside Singleton's girlfriend's home and that after the assault, Jordan's identification, cell phone, cell phone charger, earplugs, $60 in cash, his credit card, bank card, birth certificate, and social security card were stolen from him. When the police responded, they found Jordan's wallet, photo identification, and social security card inside Singleton's pockets. Morever, the jury also heard Jordan testify that Singleton struck him with the gun, causing a gash under his eye. Finally, Officer Atanacio testified that when he questioned Singleton why he had Jordan's property, he stated that Jordan "owed me money, that's why I took his shit."

{¶53} Accordingly, the jury did not lose its way in finding Singleton guilty of felonious assault and both robbery charges. Singleton's seventh assignment of error is overruled.

IV.   Prosecutorial Misconduct

{¶54} During closing arguments, defense counsel asserted that the State was trying to have it both ways — first that Singleton was the principal in committing the act, then that Singleton was merely an accomplice. Defense counsel told the jury not to "be fooled" with the "legal mumbo jumbo." Counsel then stated that "I'm trying to be honest.   I've been honest throughout this [trial] * * *."

**{¶55}** In response, the prosecutor he took exception with defense counsel calling him a "liar."

> He says that I lied to you, he says I'm trying to fool you, he says that he's been honest, insinuating that I've not been.
>
> And I want to assure you that that's not the case. Of everybody in the room, only one person here has the responsibility and has taken an oath to do justice. Who is that? That's me, the prosecutor. I don't have an obligation to win cases, I don't have an obligation to get convictions on people, I have an obligation to do justice, to present evidence to the best of my ability. Okay?

**{¶56}** In his eighth assignment of error, Singleton contends that this misconduct of the prosecuting attorney denied him due process and equal protection under the law.

**{¶57}** It is well-accepted that the prosecution is normally entitled to a certain degree of latitude in its concluding remarks. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561 (1982). A prosecutor is at liberty to prosecute with earnestness and vigor. *Berger v. United States*, 295 U.S. 78, 88, 79 L.Ed. 1314, 55 S.Ct. 629 (1935). Nevertheless, a prosecutor may not make excessively emotional arguments tending to inflame the jury's sensibilities. *State v. Tibbetts*, 92 Ohio St.3d 146, 168, 2001-Ohio-132, 749 N.E.2d 226. It is also improper, and professionally unethical, for a prosecutor, or any attorney, to attack, or make any attempt to disparage the character of,

opposing counsel in front of the jury. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

{¶58} The test for prosecutorial misconduct is "whether * * * remarks [made by the prosecutor] were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Lynch,* 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 145. The effect of the alleged misconduct must also be judged in the context of the entire trial, and not treated as an isolated incident in an otherwise properly tried case. *State v. Poole*, 116 Ohio App.3d 513, 524, 688 N.E.2d 591 (7th Dist.1996). An appellate court should only reverse a conviction if the effect of the misconduct "permeates the entire atmosphere of the trial." *Tumbleson*, 105 Ohio App.3d at 699, 664 N.E.2d 1318. "The touchstone of [the] analysis is the fairness of the trial, not the culpability of the prosecutor." *Lynch* at ¶ 145. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine beyond a reasonable doubt whether, absent the improper questions or remarks, the jury would have found the appellant guilty. *State v. Maurer*, 15 Ohio St.3d 239, 266-267, 473 N.E.2d 768 (1984); *State v. Dixon*, 8th Dist. No. 68338, 1997 Ohio App. LEXIS 915 (Mar. 13, 1997).

{¶59} Singleton contends the prosecutor disparaged defense counsel by calling him a liar and that the prosecutor elevated himself by asserting that he was the only person who had "taken an oath to do justice."

{¶60} Singleton did not object to the comments at trial; thus, he waived all but plain error. It is clear from the entire record that the prosecutor made these statements in

response to defense counsel insinuating that the State was trying to fool the jury by starting the trial with one theory of the case and then, when the evidence did not support that theory, using a different theory to comport with the evidence and testimony. Defense counsel raised the issue of honesty, and the prosecutor was entitled to defend himself against counsel's insinuation of dishonesty. Having "opened the door," Singleton cannot complain about the State's "reply in kind." *State v. Bankston*, 8th Dist. No. 43772, 1982 Ohio App. LEXIS 11355 (Mar. 11, 1982), *14, citing *State v. Swanson*, 9 Ohio App.2d 60, 69-70, 222 N.E.2d 844 (1967); *see also* 4 Ohio Jurisprudence 2d, Appellate Review, Section 977, ("A judgment will not be reversed because of improper argument of counsel which is provoked by and in reply to argument of the opposing counsel on the same subject. In such a case where both parties have offended, a reviewing court will not undertake to apportion the blame. * * *").

{¶61} However, we do find that the prosecutor's comment that he alone took "an oath to do justice" was improper. Clearly, the judge and jury also take an oath and to comment otherwise is improper. Nevertheless, this isolated comment did not "permeate the entire atmosphere of the trial" so as to deny Singleton a fair trial. Viewing the closing argument as a whole, we cannot conclude that the prosecutor's remark crossed the line that "separates permissible fervor from a denial of a fair trial." *State v. Keenan*, 66 Ohio St.3d 402, 409, 613 N.E.2d 203 (1993). We also cannot say, in light of the evidence, that but for the prosecutor's remark, the jury would have acquitted Singleton.

**{¶62}** Accordingly, we do not find plain error in this case and Singleton's eighth assignment of error is overruled.

V. Ineffective Assistance of Trial Counsel and Cumulative Error

**{¶63}** In his sixth and ninth assignments of error, Singleton contends that the errors outlined in his previous assignments of error either alone or collectively, amount to ineffective assistance of counsel; thus, requiring reversal.

**{¶64}** The Ohio Supreme Court has recognized the doctrine of cumulative error. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *Id.* at 196-197. *See also State v Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d 1068.

**{¶65}** The doctrine of cumulative error is not applicable in this case. Singleton makes blanket assertions that he was denied a fair trial by the cumulative effect of the errors made during the trial. However, he gives no analysis or explanation as to why or how the errors had a prejudicial cumulative effect. None of the errors committed in this case, when considered either individually or cumulatively, resulted in prejudicial error. As previously discussed under the other assignments of error, the jury could not ignore the direct evidence that established Singleton's guilt.

{¶66} Further, where it is found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. No. 2002CA00125, 2003-Ohio-1313, ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 185.

{¶67} Finally, to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689.

{¶68} Again, Singleton has not demonstrated that he was prejudiced by his trial counsel's performance. Furthermore, we note that trial counsel effectively defended the

first degree felony charge — aggravated robbery charge, and all firearm specifications, which carried mandatory sentences. Accordingly, Singleton's sixth and ninth assignments of error are overruled.

**{¶69}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE


EILEEN A. GALLAGHER, J., CONCURS (SEE SEPARATE CONCURRING OPINION);
TIM McCORMACK, J., CONCURS WITH MAJORITY OPINION AND CONCURS WITH SEPARATE CONCURRING OPINION


EILEEN A. GALLAGHER, J., CONCURRING:

{¶70}   I concur with the majority that the appellant failed to demonstrate a prejudicial effect by the trial court's failure to repeat all jury instructions at the conclusion of a trial.

{¶71} However, I do find that the court violated Crim.R. 30 of the Criminal Rules of Procedure that requires the trial court to give complete instructions after the arguments are completed or some or all prior to closing arguments.   This violation of the rule was then compounded by the court providing only partial written instructions to the jury, which is also violative of Rule 30.