[Cite as *State v. Fields*, 2014-Ohio-299.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99593**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# TAHJ FIELDS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-570087

**BEFORE:** Keough, J., Boyle, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** January 30, 2014

**ATTORNEY FOR APPELLANT**

James C. Young
75 Public Square, Suite 600
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Mary Weston
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Tahj Fields, appeals his conviction for robbery. For the reasons that follow, we affirm.

{¶2} In 2012, Fields was charged with aggravated robbery, robbery, kidnapping, and possession of criminal tools. The matter proceeded to trial where the jury heard the following evidence.

{¶3} On September 24, 2012, police officers Montijo and Jones responded to a call regarding a robbery in Tremont. While en route, Officer Montijo observed suspicious activity of two young males, who fit the description of the suspects to the robbery, walking behind another male. Officer Montijo testified that she observed the two males gaining ground on the male in front of them and when the males were approximately five feet behind the male, they covered their heads with hoodies and walked even closer to the male. At that point, the officers turned their zone car around and exited the car with their guns drawn. The two males immediately crossed the street and when the offices ordered the males to stop, they complied. The males were secured, taken back to the zone car, and patted down for officer safety. Officer Montijo discovered and removed money, a gun, and an iPhone from the pocket of the male later identified as Jamahl Cunningham. The other arrested male was identified as Tahj Fields.

{¶4} Jack Ricchiuto testified that he was taking a walk after dinner when he was approached and surrounded by three young men, who he described as "kids" — "late teens early 20's." Ricchiuto stated that one of the males stood in front of him, putting a

gun to his chest, while the other two stood behind Ricchiuto. According to Ricchiuto, he believed the gun to be real and he gave the men his cell phone, lighter, cigar, and wallet. Ricchiuto testified that one of the males standing behind him grabbed his ear, which caused pain and redness. After the males took the items, they walked away and Ricchiuto went to a local establishment to call the police. After calling the police, Ricchiuto went home, got on his scooter, and was headed back to the area where he was robbed when he encountered Officer Francis McManamon who told him that the suspects were arrested. He followed Officer McManamon to the location where other officers had two men in a police cruiser.

{¶5} Ricchiuto testified that he stood behind the cruiser, and although he did not look at the faces of the arrested individuals, he positively identified the arrested males as two of the males that robbed him based on their "figures" — "they looked exactly like the figures that I had seen, you know, ten minutes before that." Ricchiuto also identified the cell phone that was recovered as his iPhone.

{¶6} Detective Dale Moran testified that he received the assignment of investigating the robbery. After interviewing Jamahl Cunningham, he received the names of three more suspects involved in the robbery — Jerome Cunningham, Hector Delvalle, and Juan Fontenaz.

{¶7} Jerome Cunningham testified at trial that he and Fields acted as "look-outs" from behind a house while Jamahl, Hector, and Juan robbed Ricchiuto. According to Jerome, earlier that day, they all met up on Holmden Avenue and planned on robbing

someone. He testified that they did not discuss the roles they each would play, but just discussed the robbery would be in Tremont because they could walk there. He testified that Hector, Juan, and Jamahl each had a gun in their possession. In court, he identified the gun that Jamahl had in his possession that evening.

{¶8} Jerome testified that although he did not actually see Jamahl, Hector, and Juan rob someone, he did see in Jamahl's possession after the robbery money, a phone, cigar, and lighter. Afterwards, he, Hector, and Juan were going to head home, whereas Jamahl "was going to rob someone else" and Fields went with him. According to Jerome, Fields did not say anything or indicate what he was planning on doing, but just went with Jamahl. Jerome admitted he pled guilty to robbery in connection with this case.

{¶9} Hector's testimony greatly differed from Jerome's testimony. He testified that there was no plan to rob anyone; rather, they were all walking to Tremont to visit a friend. According to Hector, Jamahl and Juan ran across the street in the direction of a man on a cell phone, with Fields following behind them. Hector and Jerome walked by the three others as they robbed Ricchiuto. Hector testified that Jamahl had the gun pointed at the man, while Juan was standing behind the man searching through the man's pockets. According to Hector, Fields was just standing next to the victim. Hector testified that as he looked back to see what was going on, Fields started walking towards him and Jerome. After the robbery, they were all walking back towards Holmden Avenue when they passed a guy on the corner who was talking on his cell phone.

Hector testified that Fields stated: "That was easy. Look at this guy." Hector testified that he understood Tahj's statement to mean that the "first robbery was easy and let's try it again." According to Hector, Jamahl and Fields left the group and walked in the direction of the guy on the phone. Hector admitted to pleading guilty to robbery.

{¶10} The jury found Fields not guilty of aggravated robbery, kidnapping, and possession of criminal tools, but guilty of robbery. The court sentenced Fields to two years in prison. Fields appeals, raising five assignments of error for our review.

## I. Inadmissible Evidence

{¶11} Fields's first assignment of error states: "[t]he trial court abused its discretion and violated appellant's right to due process by allowing the state to introduce, in the absence of any predicate activity connected to him, testimony about an unrelated and unsubstantiated robbery." Fields argues that the testimony regarding an alleged second robbery given by Officer Montijo and Hector was impermissible under Evid.R. 403(A) and 404(B).

{¶12} Trial court decisions regarding the admissibility of any evidence, including Evid.R. 404(B) "other acts" evidence are determinations that rest within the sound discretion of the trial court and will be reviewed for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. An abuse of discretion implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). It has "also been described as including a ruling that lacks a 'sound reasoning process.'" *Morris*,

quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶13} Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶14} Evid.R. 404(B) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.   It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   Similarly, R.C. 2945.59 provides that evidence of other crimes may be admissible to show "motive or intent, the absence of mistake or accident on [defendant's] part, or the defendant's scheme, plan, or system in doing the act in question."

{¶15} Hector testified about what occurred following the robbery of Ricchiuto. According to Hector, after the robbery, they were walking back to Holmden Avenue and while they were standing on the corner, a guy on a cell phone walked passed them. Hector testified that Fields stated to the group, "That was easy.   Look at this guy."

{¶16} While defense counsel initially objected to Hector's testimony about how Fields responded as the man walked by, no objection was made to the testimony and statement now challenged on appeal.   Accordingly, we may review the argument under a plain error standard of review.   *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545

(1968), paragraph three of the syllabus. Whether we review this testimony for plain error or for an abuse of discretion, we find that the testimony was admissible as non-hearsay under Evid.R. 801(D)(2). Under Evid.R. 801(D)(2)(a), a statement is not hearsay if it is offered against a party and is his own statement. *State v. Kimmie*, 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, ¶ 91. Accordingly, the statement was not "other acts" under Evid.R. 404(B) because "That was easy" was an admission to the robbery of Ricchiuto.

{¶17} We also find that the probative value of the statement was not substantially outweighed by the danger of unfair prejudice or misleading the jury to render the testimony inadmissible under Evid.R. 403(A). Contrary to the argument on appeal, the evidence in this case is overwhelming of Fields's guilt. The jury heard testimony from two of Fields's codefendants that he played some role in the robbery. Whether he acted as a lookout as Jerome testified, or as a direct player as Hector testified, he planned and participated in the robbery of Ricchiuto. Moreover, Fields was arrested with Jamahl who had Ricchiuto's property on him, directly after the robbery. Accordingly, we cannot say that the outcome of the trial would have been different absent the challenged limited testimony of Hector.

{¶18} Fields also challenges the testimony given by Officer Montijo regarding what she observed as they were responding to a robbery call. She testified she observed two males, who fit the description of the suspects to the robbery, walking quickly behind another male and as they got closer they put their hoodies up over their heads. When the

prosecutor asked the officer what happened to the male that was walking ahead of the two males that were subsequently arrested, she responded, "He continued to walk. He didn't stop. At that point, we had to make a decision. We either stopped and talked to the person in front or we talked to the two that were obviously observed putting up their hoodies, what appeared to be, going to be another robbery."

{¶19} The record clearly demonstrates that the trial court sustained defense counsel's objection made regarding the officer's answer. Accordingly, there was no error by the trial court regarding Officer Montijo's testimony.

{¶20} Insofar as Fields argues that the trial court should have granted his motion for a mistrial because of this testimony, the objection made to her testimony was sustained. The fact that defense counsel did not move to strike Officer Montijo's response from the record or request that the court instruct the jury to disregard the answer is not raised as an issue before this court.

{¶21} Furthermore, at the request of defense counsel, the trial court gave a "curative instruction" to the jury during its final charge that the jury was only to consider the incident involving Ricchiuto. The court specifically stated: "The charges set forth in this case pertain to a single incident involving a single victim, namely Jack Ricchiuto. Disregard any testimony regarding any other incident." Moreover, the record demonstrates that defense counsel helped prepare the instruction and agreed to the instruction given by the trial court.

**{¶22}** In light of the trial court's instruction, which the jury is presumed to follow, it cannot be said that Fields's ability to receive a fair trial was compromised as he claims. *See State v. Garner*, 74 Ohio St.3d 49, 59, 1995-Ohio-168, 656 N.E.2d 623. The instruction given by the trial court was clear and specifically addressed the arguments Fields now makes on appeal. Accordingly, we find no abuse of discretion. Fields's first assignment of error is overruled.

## II. Prosecutorial Misconduct

**{¶23}** In his second assignment of error, Fields contends that the state's introduction of speculative statements by police officers about his commission of an uncharged, unsubstantiated robbery that supposedly occurred immediately after the one which he was on trial, constituted prosecutorial misconduct and denied him due process and equal protection under the law.

**{¶24}** The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether it prejudicially affected the substantial rights of the accused. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000-Ohio-187, 739 N.E.2d 300. The effect of the alleged misconduct must be judged in the context of the entire trial, and not treated as an isolated incident in an otherwise properly tried case. *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 58. Accordingly, an appellate court should only reverse a conviction if the effect of the misconduct "permeates the entire atmosphere of the trial," such that the defendant has been denied a fair trial. *Id.*, citing *State v. Tumbleson*, 105 Ohio App.3d 693, 696, 664 N.E.2d 1318 (12th Dist.1995). In analyzing whether a

defendant was deprived of a fair trial, an appellate court must determine beyond a reasonable doubt whether, absent the improper questions or remarks, the jury would have found the defendant guilty. *State v. Maurer*, 15 Ohio St.3d 239, 266-267, 473 N.E.2d 768 (1984).

{¶25} In this case, Fields contends that the prosecutor engaged in misconduct by asking questions that "the prosecutor knew the prejudicial effect of [when] asking the police what happened after the robbery." It appears that Fields is arguing that the prosecutor purposefully asked questions to illicit inadmissible answers. We disagree.

{¶26} During Officer Montijo's testimony, she explained what she observed as they were responding to a robbery call. She testified she observed two males, who fit the description of the suspects to the robbery, walking quickly behind another male and as they got closer they put their hoodies up over their heads. When the prosecutor asked the officer what happened to the male that was walking in front of the two males that were subsequently arrested, she responded, "He continued to walk. He didn't stop. At that point, we had to make a decision. We either stopped and talked to the person in front or we talked to the two that were obviously observed putting up their hoodie, what appeared to be, going to be another robbery." The trial court sustained defense counsel's objection made regarding the officer's answer, but the defense did not move to strike the response.

{¶27} Reviewing the prosecutor's entire examination of Officer Montijo, the prosecutor's question was not improper. It would be unfair for this court to impute

misconduct on a prosecutor when a witness supplies an answer that goes beyond the question asked, without any additional evidence of impropriety. Moreover, as previously discussed, the trial court sustained defense counsel's objection to Officer Montijo's response and instructed the jury at the close of trial that they were only considering one incident and to disregard any other incident.

{¶28} Fields's second assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶29} In his third assignment of error, Fields contends that his conviction for robbery was not supported by sufficient evidence.

{¶30} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶31} Fields was convicted of robbery in violation of R.C. 2911.02(A)(2), which provides that "no person, in attempting or committing a theft offense or in fleeing

immediately after the attempt or offense, shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another."

**{¶32}** Fields argues the evidence was insufficient because "no evidence other than Hector's testimony supports the idea that [he] was involved at all." Under our standard of review, Hector's testimony alone is sufficient evidence to support Fields's conviction for robbery. Hector testified that Jamahl, Fields, and Juan approached and surrounded the victim. According to Hector, Fields stood directly to the side of the victim while Jamahl pointed the gun at the victim and searched through the victim's pockets, taking his property. Hector testified that Juan was standing behind the victim and then subsequently struck the victim on the side of his face causing him physical harm.

**{¶33}** Accordingly, viewing the evidence in light most favorable to the prosecution, we find that sufficient evidence was presented supporting Fields's robbery conviction.

## IV.   Manifest Weight of the Evidence

**{¶34}** In his fourth assignment of error, Fields contends that his conviction for robbery was against the manifest weight of the evidence.

**{¶35}** "'A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion.'" *State v. Ponce*, 8th Dist. Cuyahoga No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the

credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶36} Fields argues that his convictions are against the manifest weight of the evidence because the victim's on-scene identification of Fields was unreliable and the police did not conduct a thorough investigation. However, the jury heard all the evidence, including conflicting testimony by the codefendants and police officers, and considered the circumstances surrounding the victim's identification.

{¶37} Under well-settled precedent, we are constrained to adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205,

1996-Ohio-222, 661 N.E.2d 1068, and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. As this court has previously recognized, a defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Gaughan*, 8th Dist. Cuyahoga No. 90523, 2009-Ohio-955, ¶ 32, citing *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958 at ¶ 21.

{¶38} Regardless which testimony is believed, Fields's conviction for robbery was not against the manifest weight of the evidence. Jerome testified that he and Fields were acting as look-outs while the other three approached the victim and robbed him. Hector testified that Fields was an active participant by approaching the victim with Juan and Jamahl. Under the state's theory of the case, Fields's actions — either as a look-out or as an active participant, demonstrated that he aided and abetted in the commission of the robbery.

{¶39} The jury could not ignore that Fields was arrested with Jamahl, who had the gun and the victim's property on him. Moreover, the jury consistently heard that Fields played some role in the robbery. Based on the record before us, we cannot say that this is the exceptional case where the court clearly lost its way in finding Fields guilty of robbery. The jury's verdict demonstrates that it considered all the evidence, weighed the testimony of all the witnesses, and discounted and accepted testimony where the jury determined it was appropriate. Accordingly, his fourth assignment of error overruled.

V.   Cumulative Effect of Errors

**{¶40}** In his fifth assignment of error, Fields contends that the cumulative effect of the errors at trial violated his right to due process and rendered the trial fundamentally unfair.

**{¶41}** The "cumulative error" doctrine states that a "conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of the trial court error does not individually constitute cause for reversal."  *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623.   In order to find cumulative error, we must find:   (1) that multiple errors were committed at trial, and (2) there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors.   *State v. Viceroy*, 8th Dist. Cuyahoga No. 97031, 2012-Ohio-2494, ¶ 21, citing *State v. Clark*, 8th Dist. Cuyahoga No. 89371, 2008-Ohio-1404, ¶ 62.

**{¶42}** Having found no causes for reversal, this doctrine is not applicable to this case.   Accordingly, Fields's fifth assignment of error is overruled.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, A.J., and
MARY EILEEN KILBANE, J., CONCUR